### ALPHEUS SWALLOW *vs.* CHARLES EMERY.
### SAME *vs.* REUBEN D. RIPLEY.

The plaintiff agreed to sell two horses and a wagon to J. S., J. S. to take them, but the property to be in the plaintiff until they were paid for, and payment to be made by J. S. drawing a certain amount of wood at a fixed price. After J. S. had drawn part of the wood, one of the horses died, but J. S. continued to keep the rest of the property, and paid a further sum in cash. The plaintiff then took the remaining horse, and J. S. sold the wagon to the defendant. *Held,* in an action for conversion of the wagon, that evidence was admissible that the amount paid by J. S. in work and money exceeded the value of the wagon, and that J. S. claimed to have become thereby the owner.

Two ACTIONS OF TORT, the first against Emery for the conversion of a wagon ; the second against Ripley, for the conversion of a pair of harnesses. The cases were tried together in the Superior Court, before *Rockwell*, J., who allowed the following bill of exceptions :

"It was admitted that a demand was made upon the defendants by the plaintiff before action, and a refusal was made by them. The defendants denied the conversion, and alleged that the property was in themselves.

"The plaintiff, who was the owner of the property, in December 1870, agreed to sell to one Waby two horses, a wagon and a pair of harnesses, to be paid for by Waby by drawing 70 cords of wood from Dunstable to Lowell, at $3 a cord, by computation, and the wagon, harnesses and horses were to remain the plaintiff's property till paid for by the drawing of 70 cords of wood, when the plaintiff, as one witness testified, was to give Waby a bill of sale. On February 25, 1871, one of the horses died; and there was no evidence that the death was caused by the fault either of Waby or the plaintiff. At that time, the team having been in Waby's possession since December 1870, when Waby took possession under the agreement aforesaid, Waby had drawn 37 cords of wood towards the payment of the team. Afterwards Waby used the wagon, harnesses and other horse in teaming, and the plaintiff received $18 in money from Waby's work.

"In April 1871 Waby sold the wagon to the defendant Emery, and the harnesses to the defendant Ripley, and the plaintiff,

against the will of Waby, took possession of the other horse, and afterwards sold it for $40. The plaintiff testified that the horse that died was worth $60, and it was agreed that the wagon was worth $55, and the harnesses $30.

"The defendants offered to prove that Waby was a minor; that he, at the time of the sale of the property to them, had paid the plaintiff the full value of the wagon and harnesses and more, in proportion to what he was to have paid for the whole property had not the horse died; that Waby claimed to have become the owner of the wagon and harnesses by having paid for them and by its being out of the plaintiff's power to convey to him a title to the residue; and that he claimed that he had a right to sell them and did sell them to the defendants. But the judge rejected the evidence.

"The defendants offered to prove that, before the sale to them, Waby, after deducting the value of the horse that died, and also the value of the horse taken and sold by the plaintiff, had much more than paid, according to the terms of the bargain between the plaintiff and Waby, for the remainder of the property, which was sold to the defendants; that Waby, having so paid for it, claimed that it was his, and that the plaintiff had no right to take from him the wagon and harnesses; and that, having paid for what remained after the death of the horse, Waby claimed he had a right to sell and did sell it to the defendants for its full value. But the judge excluded the evidence, and directed verdicts for the plaintiff. The jury returned verdicts, against Emery for $55, and against Ripley for $30." The defendants alleged exceptions.

*F. A. Worcester*, for the defendants.

*D. S. Richardson*, (*G. F. Richardson* with him,) for the plaintiff.

CHAPMAN, C. J. It appears that the plaintiff delivered the horses, wagon and harnesses to Waby to be used, and under a contract of sale when the stipulated price should be paid. The price was to be a gross sum for the whole property, and payable in labor. The articles were to remain the property of the plaintiff till the whole amount should be paid. After the payment, the plaintiff was to give Waby a bill of sale. The loss of one of the

horses, by its death without any fault on the part of Waby, was the plaintiff's loss, and disabled him from performing the contract on his part. Nor would he be entitled to receive the gross sum for the rest of the property. Whatever right the circumstances might have given him to rescind the contract, he did not exercise it, but allowed the property to remain in Waby's hands, and accepted from him a further payment of $18 in cash. This operated as a severance of the original contract; and by retaining the property that remained, Waby would be liable to pay for that property, and not the gross sum agreed upon for the whole.

When the plaintiff took the other horse, he thereby reduced his claim against Waby; and as he sold the horse for $40, it was at least reduced by that amount.

The wagon and harnesses were then the only property remaining in Waby's hands; and if he had paid the plaintiff the full value of it, he was entitled to hold it as his own. A bill of sale would not be necessary to pass the title. A jury would be authorized to find that it was his, and that he had a right to sell it to the defendants. The evidence offered should have been admitted. *Exceptions sustained.*