LUDDEN & BATES SOUTHERN MUSIC HOUSE v. DUSENBURY.

1. Where a hired chattel was, by the terms of the agreement, received by the bailee at the place of the contract and then shipped by the bailor to the home of the bailee, who, offering to pay the freight but refusing to pay a charge for storage, does not remove it from the depot, the chattel is nevertheless in the possession of the bailee.

2. An agreement stipulated for the hiring of an organ valued at $95 for the term of nine months at a monthly rental of $10, with an option to the bailee to buy it at any time within that period at the said valuation, in which case the money paid for the rental should be deducted from the purchase money. *Held*, that this was not a mortgage or a conditional sale, but a contract of hiring only with an option to buy at a future time.

3. This case distinguished from *Talmadge* v. *Oliver*, 14 *S. C.*, 522; *Straub* v. *Screven*, 19 *Id.*, 445; and *Herring & Co.* v. *Cannon*, 21 *Id.*, 212.

4. This agreement not having been recorded as required by the act of 1882 (18 *Stat.*, 35), it was void as to a subsequent purchaser at a sheriff's sale from the bailee, in possession, for value, without notice; and therefore the purchaser was entitled to retain it as against the bailor.

Before WALLACE, J., Horry, October, 1886.

The Circuit Judge charged the jury in this case that the

agreement was a conditional sale of the organ to be paid for in monthly instalments, the condition being fulfilled when these instalments were all fully paid; that in order to prevent the rights of subsequent creditors and purchasers for valuable consideration without notice from attaching, the paper should have been recorded; that the possession had vested in Franks; and that the words used—"hiring" and "renting"—did not make the contract, but the contract must be construed by its meaning as gathered from its import and purport.

Other matters are stated in the opinion.

*Mr. W. W. Harllee*, for appellant.

*Mr. Jos. T. Walsh*, contra.

November 25, 1887.  The opinion of the court was delivered by

MR. JUSTICE MCIVER.  This action was brought by the plaintiffs to recover possession of an organ shipped by the plaintiffs from Goldsboro, North Carolina, to A. W. Franks at Bucksville, S. C., on or about March 26, 1884, under an agreement, of which the following is a copy :

"NOTICE TO LESSEE.—Carefully read the terms of agreement before signing, as no verbal or written agreement or understanding not contained herein will be recognized by us.

"(Signed)     LUDDEN & BATES SOUTHERN MUSIC HOUSE.

"This certifies that I, A. W. Franks, now residing at Bucksville, Horry County, South Carolina, have received of Ludden & Bates Southern Music House one Packard organ, style 14, No. 22160, and valued at ninety-five dollars, which I am to use with care and to return in as good condition as it now is, the ordinary use and wear thereof excepted ; and in case of loss or damage by fire, water, tempest, or otherwise, I agree to make good such loss or damage.  I have agreed to hire said instrument for the term of nine months from this date, and to pay during said term the sum of ninety-five dollars as rent therefor, in the following manner, *viz.*, ten dollars on March 25, 1884, which is in payment of the rent for the first month only, and as advance deposit to secure against damages to said instrument while in my possession, or for any expenses incurred in its recovery in case the aforesaid rental payments are not paid as agreed ; and thereafter

ten dollars on the 25th day of each and every month thereafter during the term above specified, with interest at the rate of 8 per cent. after maturity upon all rental payments not made as above stipulated. I further agree to make all payments in current funds at their office at Savannah, Georgia, without notice or demand, and to assume all cost of remittance of collection of drafts, etc. But if default shall be made in either of said payments, or I shall sell, offer for sale, remove, or attempt to remove, the said instrument from my aforesaid residence without the written consent of said Ludden & Bates Southern Music House, then, and in that case. I agree to return the same, and they, or their agent, may resume actual possession thereof; and I hereby authorize and empower the said Ludden & Bates Southern Music House, or its agent, to enter the premises wherever said instrument may be and take and carry the same away, hereby waiving any action for trespass or damages therefor, and disclaiming any right of resistance thereto. And I further agree to pay all expenses incurred by the said Ludden & Bates Southern Music House in the renting and returning of said instrument, including reasonable attorney fees, all other legal expenses which may be incurred in obtaining possession of said instrument, or in the collection of any payments due thereon. It is also further understood that I may, at any time within said term of rental, purchase the said instrument by paying the above valuation therefor, and then, and in that case only, all amounts theretofore paid as rental or advance deposit, shall be deducted from price of instrument.

"Witness my hand and seal this 25th day of March, 1884.
    "(Signed)                    A. W. FRANKS. [L.S.]"

When the organ reached its destination at Bucksville it was stored in a warehouse, and when Franks, some time after its arrival, applied for it, offering to pay the freight, but declining to pay the storage, he could not get it. Afterwards, on July 15, 1884, the organ, while still in the warehouse, was levied on by the sheriff under an execution, issued to enforce a judgment recovered by Sampson & Son against Franks in 1883, and at the sale under such execution the defendant became the purchaser, and he having complied with his bid took possession of the organ, and this action was then brought against him by the plaintiffs to recover possession of the organ, they basing their claim upon the grounds that Franks never had any such title to, or possession of, the organ as would subject it to the lien of an execu-

tion against him, and that defendant could not claim the protection accorded to a subsequent purchaser for valuable consideration without notice.

Under the charge of the Circuit Judge the jury rendered a verdict for the defendant, and from the judgment entered thereon the plaintiffs appealed upon the several grounds set out in the record. These grounds raise three questions : 1st. Whether Franks ever had such a possession of the organ as would render it liable to levy and sale under an execution against him. 2d. Whether the title to the organ ever passed out of the plaintiffs, either absolutely or conditionally, and into Franks. 3d. Whether the defendant can claim the protection accorded to a subsequent purchaser for valuable consideration without notice.

These questions all depend upon the answer to the inquiry— what was the real nature of the contract between the plaintiffs and Franks, as evidenced by the agreement, of which a copy is above set out? If, as the Circuit Judge instructed the jury, the true construction of this agreement is, that it was a contract for the conditional *sale* of the organ, whereby the plaintiffs retained the title for the purpose of securing the payment of the purchase money, then clearly the relations between the parties were those of mortgagor and mortgagees (*Straub* v. *Screven*, 19 *S. C.*, 445); and as the agreement was not recorded, and there is no pretence that the defendant had actual notice of the agreement, he was clearly in the position of a subsequent purchaser for valuable consideration without notice under the case of *McKnight* v. *Gordon*, 13 *Rich. Eq.*, 222. So, too, if there was a conditional sale of the organ, then the delivery to the carrier was a delivery to the consignee, Franks, although he never acquired the actual possession, and the instrument, wherever found, would be liable to levy under an execution against Franks. Indeed, it appears from the terms of the agreement itself that Franks acknowledged having received the article, and if he chose to take it at Savannah, where the agreement seems to have been executed, it must thenceforward be regarded as in his possession through his agent, the carrier, by whom it was transported to Bucksville.

The only serious question, then, in the case is as to the con-

struction and effect of the written agreement entered into between the plaintiffs and Franks. There can be no doubt that it is competent for parties to enter into a written agreement for the hire or loan of a chattel, and until the passage of the act hereinafter referred to, there was no law requiring such an agreement to be recorded in order to protect such chattel from the claims of the creditors of, or purchasers from, the hirer or borrower, whether antecedent or subsequent. It being clearly competent for parties to make such an agreement, the practical inquiry in this case is, whether they have done so. What was the intention of the parties in making this agreement? This must be discovered from the words which they have used, for we have no evidence beyond that. Looking, then, to the language employed, it would seem that they could not well have used stronger language than was employed to express an intention to make a contract of hiring. The transaction is so characterized in express terms throughout the whole instrument, and there is not a word in it that indicates, in the remotest degree, that the parties contemplated a sale, until we come to the last paragraph, and then the language used clearly imports—not an intention to make a *present* sale—but simply an intention to give Franks *an option* to buy at some *future* time, if he shall *then* desire to do so. The language is : "I *may* at any time, within said term of rental, purchase the said instrument;" it is not "I *will*" purchase.

This clearly negatives the idea that there was a sale at the time the agreement was entered into, and does not even denote an intention that there was to be a sale, at all events, at some future time; but simply an intention that Franks might, within the time limited, become the purchaser, if he saw fit to do so, but there was nothing to bind him to become a purchaser if he did not thereafter choose to buy. How such language can be construed as evidencing an intention to sell at the time the agreement was entered into, it is difficult to conceive. For if that was the intention, then it would have been not only useless, but absurd, to insert the provision that Franks might, at a subsequent time, if he saw fit to do so, become the purchaser. It would certainly look very much like an absurdity for a man, after having entered into

a contract for the purchase of an article, to insert in such contract a stipulation that he might thereafter have the option of purchasing the same article—a privilege to buy an article which he had already bought.

Test the question in this way : Suppose that, under this agreement, Franks had received actual possession of the organ, and after enjoying such possession for four months the instrument had been destroyed, or rendered entirely useless, by the act of God or the public enemy, and that Franks had thereupon offered to rescind the contract, offering to pay the stipulated rent for four months, would it have been possible for the plaintiffs to recover the whole amount of ninety-five dollars? This would depend upon an inquiry whether the contract was one of rent or sale.   If the former, Franks would undoubtedly be only liable for the stipulated rent during the term in which he enjoyed the use of the thing hired (*Bacot* v. *Parnell*, 2 *Bail.*, 424 ; *Coogan* v. *Parker*, 2 *S. C.*, 255), but if the latter, then he would be clearly liable for the whole amount.   The plaintiffs, relying upon this agreement, certainly could not claim that there was a sale, for, as we have seen, the contract in express terms characterizes the transaction as an agreement for rent and not for sale ; the only mention of a sale being in the latter part of the agreement, where Franks reserves *the right to become a purchaser* at some future time.

So that it cannot be said that there was even an agreement to sell at a future time, as there was nothing to bind Franks to become a purchaser, but that was left entirely to his own option. But even if the contract could be regarded as an agreement to sell at a future time, that would be a very different thing from a present sale.   As is said in 1 *Pars. Cont.*, 528: "An agreement to sell is a different thing from a sale, and therefore no mere promise to sell hereafter amounts to a present sale." If, therefore, under the circumstances supposed, the plaintiffs had brought an action against Franks to recover the price of the organ, Franks could certainly have claimed that he was not liable, because there was no contract of sale, but, at most, simply a reservation on his part of the option to become a purchaser, of which he had never availed himself.

The only ground upon which it is contended that this agree-

ment was really intended as a contract of sale and not of hiring, is the fact that the rent or hire reserved amounted to as much as the purchase money. This standing alone, in the absence of any evidence of any fraud or undue advantage, would not be sufficient to convert the plainly expressed intentions of the parties into something else which they have not expressed. If parties have the right, as they unquestionably have, to make a contract for the renting or hiring of personal property, the mere fact that the rent or hire agreed upon is extravagantly high, cannot have the effect of defeating the contract or converting it into a contract of a wholly different character.

. This case differs materially from the cases of *Talmadge* v. *Oliver*, 14 *S. C.*, 522; *Straub* v. *Screven*, 19 *Id.*, 445; and *Herring & Co.* v. *Cannon*, 21 *Id.*, 212, cited in the argument. In *Talmadge* v. *Oliver*, the contract, by its express terms, plainly implied that the horse there in question was delivered to Foster, upon the consideration that Foster was to board Talmadge and wife for a specified time, and that Talmadge merely reserved the title to the horse as security for the performance of Foster's agreement. Practically, it amounted to this—that Talmadge sold the horse to Foster, and was to receive payment of the price in the board of himself and wife, and to secure the performance of this agreement by Foster to furnish the board—to pay the purchase money—Talmadge reserved title to the horse. This was held to amount to a mortgage, or rather, an instrument in the nature of a mortgage, for all the incidents to such a transaction were there present—the obligation of Foster to pay the purchase money of the horse in board, and the retention of title by Talmadge to sesure the performance of such obligation.

So in *Straub* v. *Screven*, the notes sued upon in terms imported a sale of the mills and the retention of the title to secure the payment of the purchase money, and hence it was held that the relation between the parties was that of mortgagor and mortgagee. In *Herring* v. *Cannon*, the agreement showed in express terms that there was a sale of the safe, and that the retention of the title was to secure the payment of the purchase money—"this note having been given to said Herring & Co. *in part payment for a safe*, and in accordance with the terms of an agreement *for*

*the purchase thereof*, said Herring & Co. do not part with any title thereto until the purchase money has been fully paid." It was, therefore, plain that the transaction was in the nature of a mortgage.

In all these cases, therefore, it appeared from the terms of the agreements that the transactions were intended by the parties to be sales, and there was nothing to show that the transaction was of a different character—an agreement for a loan or a hiring. Here, however, the agreement by its express terms does show a contract of hiring, and does not show any contract of sale.

If, therefore, this case had arisen under the act of 1843, as it was originally adopted, or as it was re-enacted in sections 2022 and 2346 of the General Statutes of 1882, the defendant would not have been able to avail himself of the protection accorded to subsequent purchasers for valuable consideration without notice, because by that act such protection was accorded only against an unrecorded mortgage or instrument in the nature of a mortgage, and against a *vendee* claiming under a *verbal* agreement for the sale of personal property; because if the agreement was, as we have seen, not a contract of sale, but a contract of hiring, there could be no ground for construing the agreement as a mortgage, or an instrument in the nature of a mortgage, nor could Franks be regarded as a vendee.

But by the act of December 21, 1882 (18 *Stat.*, 35), which seems to have been overlooked on Circuit, as well as in the argument here, very important and material amendments have been made to section 2022 of the General Statutes, whereby that section now reads as follows: "Every agreement between the vendor and vendee, bailor and bailee, of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors, or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages: provided, that nothing herein contained shall apply to livery stable keepers, inn keepers, or any other persons letting or hiring property for a temporary purpose."

It will thus be seen that the law as it now stands, and as it

stood when the agreement here in controversy was made, is no longer confined to *verbal* agreements, but extends to *every* agreement, and that it covers agreements between *bailor and bailee* as well as those between *vendor and vendee,* and that all such agreements must be reduced to writing and recorded like mortgages, in order to make them valid against the claims of subsequent creditors or purchasers for valuable consideration without notice. Inasmuch, therefore, as the agreement here in question was never recorded, and inasmuch as there is no evidence that the defendant, who, as we have seen, must be regarded as a subsequent purchaser, ever had any notice of the agreement, it is quite clear that, even regarding the agreement as a contract, not of sale, but a contract of hiring, which is a bailment, the defendant was entitled to recover.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.