# RANDOLPH & COMPANY *v.* COLUMBIA GRAPHOPHONE COMPANY.

CONTRACTS; BAILMENT; CONDITIONAL SALES.

A contract acknowledging receipt of certain machines in good order, and by

Note.—As to destruction of property sold conditionally while in seller's possession, see note in 36 L.R.A. (N.S.) 595.

the terms of which the party receiving them promises to use them
with care and to keep them in like good order, and to pay for their
use in certain fixed monthly instalments, with the reservation that
he may purchase them at a stipulated value, in which event the sums
previously paid as rental shall be credited on the purchase price,
and by which such party agrees to return the machines at the expi-
ration of the time for which they are rented unless he buys them, in
event of which return he is not to be entitled to credit for payments
made as rental nor to any credit for depreciation while in his posses-
sion,—is a contract of bailment for hire, and not a conditional sales
contract, and in case of the destruction by fire of the machines while
in the possession of the bailee, without fault on his part, the loss
falls upon the bailor.

No. 2872.   Submitted February 24, 1916.   Decided April 24, 1916.

HEARING on an appeal by the defendant from a judgment
of the Supreme Court of the United States, entered for want
of a sufficient affidavit of defense, in an action to recover the
balance due on the purchase price of certain goods.

*Reversed.*

The COURT in the opinion stated the facts as follows:

The declaration of the Columbia Graphophone Company,
in seventeen counts, sought to recover of L. F. Randolph & Com-
pany the sum of $980.30, alleged balance due on the sale of
certain dictaphones and other machines in September and
October, 1913.   An affidavit was filed with the declaration in
conformity with the 73d rule.   From this it appears that in
September and October, 1913, the plaintiff delivered certain
dictaphones and related machines to L. F. Randolph & Com-
pany under the following contract:

The Columbia Graphophone Company.

Lease.

This certifies that I, ................ now residing at

.......... have rented and received from The Columbia Graphophone Company (whose corporate existence for all purposes is hereby admitted), through its store at 1210 G street, N. W., Washington, D. C., the following described goods:

(property described.)

all in order and condition and valued at $100, which I am to use with care and keep in like good order and condition, for the use of which I agree to pay said company, at its said store, without notice or demand, rent in advance as follows:—

Ten dollars cash for the first month and $10 cash on the .... of each successive month thereafter, for nine successive months until the whole of said sum of $100 has been wholly paid.

It being understood, however, that at any time prior to the expiration of the said rental period, I may purchase the said goods at the said agreed value above mentioned and receive a bill of sale thereof, and in the event of such purchase all sums previously paid as rental shall be credited on the purchase price. Until such payment in full the goods shall remain the property of the said company, and they are not to be removed from ...... without its written consent first had and received, and shall be exhibited to its authorized agent at any time when required during reasonable hours.

But if default shall be made in the payment of any of said sums, at the time and place above specified, or if I shall sell, sublet, assign, encumber, or dispose of, or offer or attempt to sell, sublet, assign, encumber, or dispose of, said goods, or remove or attempt to remove them from the place above mentioned, without said written consent, then, and in that case, or at the expiration of the time for which the said goods are rented, provided I shall not purchase and pay for the same in full as hereinabove provided, I will return and deliver the same to said company, and it shall have the right, without notice or demand, to take immediate possession thereof; and I

hereby authorize and empower it, or its agents, to enter the premises wherever said goods may be, without legal process, and take and carry the same away, hereby waiving any action for trespass or damages therefor and disclaiming any right of resistence thereto; and also waive all right of homestead and other exemptions under the laws of said state as against this obligation, and agree that when this lease is terminated I shall not on any ground whatever, statutory or other, be entitled to any allowance, credit, return or set-off for payments previously made, but that said company may retain all payments made as rental for use of said goods, and loss and depreciation in their value while in my possession.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Lessee's Signature.

The one given is like the others. Certain of these, rentals were paid, but the plaintiff claims that certain instalments were due on each purchase, varying from $84, $60, $58, and $44.

The affidavit alleges that these machines were in defendant's possession until November, 1914, at which time they were destroyed by fire.

The affidavit of the defendant in reply denies the purchase of said machines, and alleges that they were held under the lease contract aforesaid, and that defendant has never exercised its option to purchase the same. It admits the failure to pay rentals under certain of the contracts amounting to $82. It says that rentals due in March, 1914, and subsequent thereto, were not paid, because on March 19, 1914, a fire occurred in defendant's place of business, where, by the terms of the lease, said appliances were located and in use, and the same were destroyed. That the destruction was due to an unavoidable accident and without fault on the part of the defendant. On motion the court entered summary judgment for the plaintiff for the full amount of the demand, and the defendant has appealed.

*Mr. Hugh M. Sterling* for the appellant.

*Mr. Fred B. Rhodes* and *Mr. Paul B. Rhodes,* for the appellee, in their brief cited:

*Adams* v. *Nichols,* 19 Pick. 275; *Arthur & Co.* v. *Blackman,* 63 Fed. 536; *Bank* v. *Vandyck,* 4 Heisk. 617; *Bigbee* v. *Coombs,* 64 Mo. 529; *Bridget* v. *Cornish,* 1 Mackey, 29; *Bryan* v. *Harr,* 21 App. D. C. 190; *Burnley* v. *Tufts,* 66 Miss. 48; *Chicago Equipment Co.* v. *Merchants' Bank,* 136 U. S. 268; *Collerd* v. *Tulley,* 78 N. J. Eq. 557; *Columbia Laundry Co.* v. *Ellis,* 36 App. D. C. 583; *Connihan* v. *Thompson,* 111 Mass. 270; *Cooper* v. *Chicago Cottage Organ Co.* 58 Ill. App. 248; *Dane* v. *Hanson & Co.* 212 Mass. 124; *Dermott* v. *Jones,* 2 Wall. 1; *Exposition Arcade Corp.* v. *Lit Bros.* 75 S. E. (Va.) 117; *Fowler* v. *Bott,* 6 Mass. R. 63; *Fowler* v. *Cotton State Lumber Co.* 39 App. D. C. 220; *Goddard* v. *Foster,* 17 Wall. 123; *Hamilton* v. *Insurance Co.* 136 U. S. 242; *Hartford* v. *Jackson,* 11 N. H. 145; *Heryford* v. *Davis,* 102 U. S. 235; *Hintermister* v. *Lane,* 27 Hun, 497; *Hollenberg Music Co.* v. *Barron,* 140 S. W. (Ark.) 582; *King* v. *Curtin,* 31 App. D. C. 23; *La Valley* v. *Ravena,* 78 Vt. 152; *Levy* v. *Gadsby,* 3 Cranch. 180; *Martineau* v. *Kitching,* L. R. 7 Q. B. 436; *Morris, In re,* 156 Fed. 597; *Osborn* v. *South Shore Lumber Co.* 91 Wis. 526; *Perkins* v. *Bank,* 43 S. C. 39; *Phillips* v. *Hollenberg Music Co.* 82 Ark. 9; *Phillips* v. *Stevens,* 16 Mass. 238; *Randle* v. *Stone & Co.* 77 Ga. 501; *Rosenbaum* v. *King,* 114 Ill. App. 648; *Sand Filtration Corp.* v. *Cowardin,* 213 U. S. 360; *Sanders & Stayman* v. *Wilson,* 19 D. C. 555; *Singer Mfg. Co.* v. *Smith,* 40 S. C. 529; *Slater* v. *Van Der Hoogt,* 23 App. D. C. 417; *Smith* v. *Gilmore,* 7 App. D. C. 192; *Southern Music House* v. *Dusenbury,* 27 S. C. 464; *Swallow* v. *Emery,* 111 Mass. 355; *Tice, In re,* 139 Fed. 52; *Trenton* v. *Bennett,* 27 N. J. L. 513; *Tufts* v. *Griffin,* 107 N. C. 47; *Tufts* v. *Wynne,* 45 Mo. App. 42; *West Pub. Co.* v. *Ballinger,* 43 W. L. R. 376, 44 App. D. C. 49; *White* v. *Solo-*

*mon,* 164 Mass. 516; *Whitlock* v. *Lumber Co.* 145 N. C. 120; Cyc., Vol. 35, 663; Cyc., Vol. 35, 670-71; Williston, Sales, Par. 304.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The contract shows clearly, we think, a lease of the machines for the use of which defendant promises to pay in certain fixed instalments. The contract provided that the lessee might purchase the goods at the agreed value mentioned, in which event all sums previously paid as rentals shall be credited on the purchase price. It is also stipulated that at the expiration of the time for which the goods are rented, and provided the lessee shall not pay for the same in full, as provided, lessee will return and deliver the same to the said company, and it shall have the right, without demand, to take possession of the said goods and remove the same. It further provides that when the lease is terminated the lessee shall not be entitled to any allowance, credit, return, or set-off for the payments made as rentals for the use of said goods, and for depreciation while in defendant's possession. The parties were free at the time to enter into any contract that they might agree upon.

The contention of the plaintiff is that the contract was a conditional sale; in other words, that the intention was a sale of the machines to defendant, who agreed to purchase at a fixed price, and that the sum agreed as rental was in fact the purchase price.

The contention of the defendant is that it was a contract for hire, and nothing more.

Looking to the language employed, we think it plainly means a hiring. By its expressed terms it is a contract for hiring, and not of sale. Leasing the machines to defendant, it gave defendant the option to purchase in the future if he desired. Until he exercised his option it remained a lease, and not a sale. The very question was before the court in *London & B.*

*S. Music House* v. *Dusenbury,* 27 S. C. 464, 4 S. E. 60. The contract was similar to this. The court held that it was one of hiring, and not of sale. This decision was reaffirmed in *Ludden & B. S. Music House* v. *Hornsby,* 45 S. C. 111, 22 S. E. 781. The case upon which the appellee relies chiefly, *Heryford* v. *Davis,* 102 U. S. 235–244, 26 L. ed. 160–163, does not antagonize this conclusion.

The contract was ambiguous, and the court held that, instead of a contract for hire, it was one actually of conditional sale, with reservation of title. That this was the effect of the decision is stated by Mr. Justice Bradley in *Harkness* v. *Russell,* 118 U. S. 663, page 680, 30 L. ed. 285, 291, 7 Sup. Ct. Rep. 51. He says there: "The whole question in *Heryford* v. *Davis* was as to the construction of the contract. This was in the form of a lease; but it contained provisions so irreconcilable with the idea of its being really a lease, and so demonstrable that it was an absolute sale with a reservation of a mortgage lien, that the latter interpretation was given to it by the court."

In the present case the contract is plainly a lease providing for the delivery of the property, payment of rentals, and the return at the expiration of the lease. There are no irreconcilable provisions in the contract which could convert it into a sale, because the purchase was purely optional with the defendant. We think there is no question but that the contract constituted a bailment for hire.

The next contention of the appellee is that, assuming it to be a lease contract, that the loss by accidental fire falls on the lessee, and not the lessor, because of the language of the lease, where it is provided, after receipting in good order and condition, the following: "Which I am to use with care and keep in like good order and condition." It is argued that this condition makes it imperative upon the lessee to keep the property in good condition and return it in like order, and that it is analogous to the case of the contract for the lease of a house with condition that the lessee shall keep it in repair. The rule

in regard to the leasing of tenements is not applicable to the bailment for hire. In the latter case the bailee is liable only for ordinary care. *Clark* v. *United States,* 95 U. S. 539–542, 24 L. ed. 518, 519.

As is shown by the affidavit of defense, and not contradicted, the fire was accidental and wholly without fault of the bailee. The loss falls on the bailor. See also *Swallow* v. *Emery,* 111 Mass. 355.

The plaintiff was not entitled to a summary judgment under the facts disclosed by the affidavit, and the same should have been submitted to the jury.

The judgment is reversed, with costs, and the cause remanded for trial; but if the plaintiff is content to accept the amount of rent instalments admitted to be due by the affidavit of the defendant, the court may render judgment therefor.

*Reversed.*


A motion by the appellee for a rehearing was denied May 27, 1916, Mr. Chief Justice Shepard delivering the opinion of the Court:


Appellee's motion for rehearing cites for the first time the case of *Sun Printing & Pub. Asso.* v. *Moore,* 183 U. S. 642, 46 L. ed. 366, 22 Sup. Ct. Rep. 240, which it claims is decisive of the present case.

It has never been doubted that a bailee may enlarge his legal liability by express contract, and that case simply establishes that proposition. The facts, however, are quite different from these. The contract was for the hire of a yacht. It contained a number of stipulations, among them one liquidating the damages which would result from loss, and a number of other stipulations which the court held to put the positive duty on the hirer to surrender the vessel at the expiration of the charter, and to be responsible for the value even though impossibility of return was brought about without his fault.

It was stated by Mr. Justice White, who delivered the opin-

ion of the court, at page 656: "Pausing for a moment to consider the foregoing stipulations, it is difficult to conceive how language could more aptly express the absolute obligation, not only to repair and keep in good order to the end of the hiring and to return, but, moreover, to be responsible for any and all loss and damage to the vessel, her fixtures, and appointments. These stipulations seem to us to leave no doubt of the absolute liability to return; in other words, of the putting of the risk of damage or loss of the vessel upon the hirer. But if there could be doubt after considering the provisions just above referred to, such doubt is dispelled when it is considered that the contract proceeds to say that 'for the purpose of this charter the value of the yacht shall be considered and taken at the sum of $75,-000. And the said hirer shall procure security or guaranty to and for the owner' in the sum stated 'to secure any and all loss and damage which may occur to said boat or its belongings which may be sustained by the owner by reason of such loss or damage and by reason of the breach of any of the terms or conditions of this contract.' In other words, having provided for all repairs, having stipulated absolutely for the return of the vessel in full repair, having put the risk of any and all loss on the hirer, the contract then in express terms fixes the value of the vessel, and makes provision for security to protect against any and all loss or damage sustained by a failure of the hirer to fulfil each and all of the positive obligations which the contract imposed."

We find nothing in that case which requires the reconsideration of the judgment heretofore rendered.

The motion for rehearing is denied, with costs.