## TOWNSEND v. ASHEPOO FERTILIZER CO.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1914.)

No. 1209.

1. SALES (§ 472*)—CONDITIONAL SALES—UNRECORDED CONTRACT.

An unrecorded agreement whereby the seller of fertilizers to the bankrupt reserved to itself an interest in the fertilizers so sold was within Civ. Code S. C. 1912, § 3740, declaring that every such agreement shall

---

be void as to subsequent creditors or purchasers for value without notice unless recorded, etc.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1366–1376; Dec. Dig. § 472.*

What constitutes a contract of conditional sale, see note to Dunlap v. Mercer, 86 C. C. A. 448.]

2. BANKRUPTCY (§ 184*)—CHOSES IN ACTION—OWNERSHIP—"INSTRUMENT"— "PROPERTY"—RECORD.

Civ. Code S. C. 1912, § 3542, provides that all deeds or instruments in writing conveying real or personal estate and creating a trust in regard to such property or charging or incumbering the same, or instruments in writing in the nature of a mortgage of any property real or personal, shall be valid, etc., only when recorded within ten days from the date of delivery. *Held*, that where a contract for the sale of fertilizers provided that all goods sold to the buyer on credit were to be held by him in trust for the payment of his obligations to the seller for the price provided, that the proceeds of any sale or sales by him whether for cash or credit shall represent the goods sold and be held for the benefit of the seller to be applied in payment of the buyer's obligations, etc., the claims of the buyer against his customers for fertilizers sold to them constituted "property," and the contract an "instrument" within such section, and hence the instrument was invalid for want of record as against the buyer's trustee in bankruptcy to confer on the seller a lien on such debts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*

For other definitions, see Words and Phrases, vol. 4, pp. 3665–3668; vol. 6, pp. 5693–5728; vol. 8, pp. 7768–7770.]

Cross-petitions to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Cross-petitions in bankruptcy by W. H. Townsend and another, and by T. P. Meetze, trustee in bankruptcy of the estate of W. P. Roof, and by the Ashepoo Fertilizer Company to superintend and revise, in matter of law, a decree sustaining in part an alleged lien on certain of the bankrupt's assets. Modified.

George B. Timmerman, of Lexington, S. C. (Thurmond, Timmerman & Callison, of Lexington, S. C., on the brief), for petitioners and cross-respondents.

Geo. F. von Kolnitz, of Charleston, S. C., for respondent and cross-petitioner.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. The petitions of the trustee of the bankrupt estate of W. P. Roof, and of Ashepoo Fertilizer Company, claiming to be a lien creditor or owner of assets in the hands of the trustee, involve important questions under the recording statutes of South Carolina.

On February 6, 1912, Ashepoo Fertilizer Company agreed to sell W. P. Roof 265 tons of fertilizers; the form of contract adopted being a written proposition to Roof setting forth prices and terms, duly accepted by him. The second paragraph of the contract contained this stipulation:

"All of the said goods sold to you on credit are to be held by you in trust for the payment of your obligations to Ashepoo Company, for the purchase price thereof, as per above sale, and when the same shall be fully paid then for your own benefit, with full power in you, however, to sell and dispose of the same, or any part thereof, for cash or on credit secured by good note and such other good securities as you require; provided that the proceeds of any such sale and sales, whether cash or credit, shall represent the goods sold and be held by you upon the same terms and for the same purposes as the goods are held and the cash for cash sales to be remitted, when the goods are sold to Ashepoo Fertilizer Company, to be applied to the payment of your obligation to them, whether they have matured or not, until they are paid in full."

All fertilizers shipped to Roof in excess of the 265 tons were to be received by him on the same conditions. He was authorized to collect from his customers the debts contracted for fertilizers, and remit to the company for credit on the purchase price. On March 22, 1912, about six weeks after the execution of the contract, Roof was adjudged a bankrupt. In the meantime he had ordered out and received a number of shipments of fertilizer, all of which he had resold to his customers except a little over a car load which was in his hands when the petition in bankruptcy was filed. The sales to his customers had been charged to them on his books, but no notes or other signed obligations had been taken. Under these conditions the referee held that failure to record the agreement made the reservation of title or lien for the security of Ashepoo Fertilizer Company void under the recording laws of South Carolina, not only as to the fertilizers in the hands of Roof, but also as to the debts of Roof's customers for sales made by him. The District Judge, on review, approved the finding of the referee as to the unsold fertilizer, but held that the recording statutes of South Carolina had no application to mortgages or sales of choses in action, and adjudged the accounts to be the property of Ashepoo Fertilizer Company. Both the trustee and the fertilizer company by separate petitions ask a review of this finding.

It would be difficult to frame statutes more comprehensive than those of South Carolina as to the instruments required to be recorded. Section 3542 of the Civil Code provides:

"3542. All deeds of conveyance of lands, tenements or hereditaments, either in fee simple or for life; all deeds of trusts or instruments in writing, conveying either real or personal estate, and creating a trust or trusts in regard to such property, or charging or incumbering the same; all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal, * * * shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, only when recorded within ten days from the time of such delivery or execution in the office of the register of mesne conveyance or clerk of court. * * *"

To make the law still more comprehensive, section 3740 was enacted:

"3740. Every agreement between the vendor and vendee, bailor or bailee of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable con-

sideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages; but nothing herein contained shall apply to livery stable keepers, innkeepers, or any other persons letting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs or work or labor done thereon, or as a pledge or collateral to a loan."

[1] The unrecorded agreement here was between a vendor and vendee whereby the Ashepoo Fertilizer Company, as vendor, reserved to itself an interest in the fertilizers sold to Roof as vendee; it therefore fell under section 3740 and was void as to subsequent creditors. It follows that the fertilizer which remained in the hands of Roof belongs to the trustee as property of the bankrupt, free from any lien in favor of the fertilizer company. Ludden & Bates Southern Music House v. Dusenburg, 27 S. C. 464, 4 S. E. 60; Armour v. Ross, 78 S. C. 294, 58 S. E. 941, 1135. Even if the contract had provided for a bailment instead of a sale of the fertilizer, the same result would follow, since the South Carolina statute covers bailments as well as sales. The case of Ludvigh v. American Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. ——, has therefore no application.

The status of the debts of Roof's customers for fertilizers sold to them represented by his accounts against them is different from that of the fertilizers in his hands unsold. These accounts were not in existence when the contract was made, which provided that they should be held by Roof in trust for the payment of obligations for the purchase money of the fertilizers; and therefore it cannot be said that the fertilizer company reserved any interest in them. They were not sold to Roof nor were they delivered to him by the fertilizer company, and as to them the fertilizer company and Roof did not sustain to each other the relation of vendor and vendee or bailor and bailee. Hence it seems clear that the written agreement that the accounts should be held by Roof in trust for the payment of his debt to the fertilizer company cannot fall under section 3740, a recording statute relating to agreements for the reservation of an interest in property by a bailor or vendor.

[2] The question remains whether the written agreement providing that these debts should be held in trust for the payment of Roof's debt does not fall under section 3542, above quoted, requiring the recording of mortgages and "all instruments in the nature of a mortgage of any property, real or personal." That the contract is "an instrument in the nature of a mortgage" seems evident. Herring & Co. v. Cannon, 21 S. C. 212, 53 Am. Rep. 661. Roof is styled in the contract "buyer" and "purchaser"; he is a debtor because he is to give notes promising unconditionally payment of the purchase money, and the stipulations as to the fertilizer and the proceeds of its sale are to secure his unconditional promise to pay. True, the words used are that he shall hold the accounts "in trust for the payment" of his obligations; but the trust was for no other purpose than to secure the payment of the debt; and it imported these obligations and these only, namely, that the debtor should pay the debt and thus discharge the property from the creditors' claims, or collect the accounts and apply the proceeds to the debt, or failing to collect, turn over the accounts to

the creditor to be disposed of and accounted for according to law. A paper in form a mortgage of the book accounts without the stipulation that they should be held in trust would impose upon the mortgagor precisely the same obligations. It is evident therefore that, as to the accounts owing to Roof, he was mortgagor and the Ashepoo Fertilizer Company mortgagee.

It seems no less evident that the accounts or debts owing to Roof and covered by the instrument were personal property. The word "property" is of the broadest signification, embracing everything that has exchangeable value or goes to make up a man's wealth, every interest or estate which the law regards of sufficient value for judicial recognition. Earle v. Maxwell, 86 S. C. 1, 67 S. E. 962, 138 Am. St. Rep. 1012; Delassus v. United States, 34 U. S. 117, 9 L. Ed. 71. Nothing is better settled than that a creditor owns debts owing to him as property; and we are unable to see what warrant the court would have to exclude such property from the operation of a statute covering all personal property, on the ground that the property is choses in action and intangible. Secret liens may be valid in the absence of a statute condemning them, Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. ——, but they are under just condemnation in the business world, and we are not inclined to indulge refinements in the interpretation of the statute in order to protect those who fail to record their papers, and then when disaster comes bring them out against subsequent creditors.

Besides, nothing is more plainly within the mischief at which the statute was directed than an unrecorded mortgage of a merchant's accounts, especially of the accounts of a merchant like Roof doing what is known as an advancing business. All know that the debts owing to such a merchant constitute an important asset, sometimes the chief asset, on which his credit rests, and those who credit him do so on the faith of these debts as his property.

Counsel for the fertilizer company rely on Chemical Co. v. Johnson, 98 N. C. 123, 3 S. E. 723, and other like cases decided by the Supreme Court of North Carolina, holding that agreements similar to that now under consideration do not fall under the recording statutes of that state. There are some differences between the statutes of North Carolina and South Carolina. But aside from that, we are unable to yield even to that high persuasive authority, because we cannot help thinking the reasoning of the court is unsound, in this, that it is founded on verbal and technical distinctions, which we have tried to show are unsubstantial, between that which the parties have chosen to call a trust to secure a debt, and a mortgage to secure a debt. The reasons we have stated for holding that the entire instrument falls under the recording statutes seem to us convincing.

In the case of Millikin v. Second National Bank of Baltimore, 206 Fed. 14, 124 C. C. A. 148, 30 Am. Bankr. Rep. 477, this court held that, under the amendment of 1910 to the Bankruptcy Act, the trustee by virtue of his appointment became a subsequent lien creditor without notice, holding the property embraced in an unrecorded mortgage for the benefit of all the creditors. It follows that the proceeds of the

property herein involved must be distributed among all the creditors of the bankrupt without distinction.

The opinion of this court is that the judgment of the District Court be modified to conform to the conclusions herein expressed.

Modified.