WARD v. AMERICAN AGRICULTURAL CHEMICAL CO.

In re FLOYD & HAYES' ESTATE.

(Circuit Court of Appeals, Fourth Circuit. February 29, 1916.)

No. 1397.

1. BANKRUPTCY ⬅184(2)—OWNERSHIP OF PROPERTY—CHOSES IN ACTION—RECORDING.

A contract between the seller and buyer, whereby the latter agrees to assign all accounts, notes, etc., taken for the property when resold, and to collect them in trust for the seller, is not required to be recorded by the statutes of South Carolina as interpreted by the Supreme Court of that state, and entitles the seller to the possession thereof as against the buyer's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. ⬅184(2).]

2. COURTS ⬅366(1)—RULES OF DECISION—CONSTRUCTION OF STATE STATUTES.

The construction of the South Carolina recording acts as not applying to the assignment of choses in action is binding on the federal courts, though contrary to an earlier decision of the federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967; Dec. Dig. ⬅366(1).]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

In the matter of the estate of Floyd & Hayes, bankrupts. From an order allowing in part the claim of the American Agricultural Chemical Company (225 Fed. 262), R. E. Ward, trustee in bankruptcy, appeals. Affirmed.

F. L. Willcox, of Florence, S. C. (Willcox & Willcox, of Florence, S. C., on the brief), for appellant.

W. C. Moore, of Dillon, S. C. (Sellers & Moore, of Dillon, S. C., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

WOODS, Circuit Judge. This appeal involves the right of the American Agricultural Chemical Company to certain notes, mortgages and open accounts claimed by it under a contract with the bankrupt firm of Floyd & Hayes. The contract dated January 14, 1914, provided that the American Agricultural Chemical Company would furnish Floyd & Hayes a quantity of fertilizer for which they gave their unconditional promise to pay at a future time. The contract contained the following stipulations:

"On May 1, next, or when called on, you agree to deliver us all cash for cash sales, and all the notes you have taken and a list of accounts that are due from purchasers of the above-named fertilizers, for the gross amount of time sales of same, these notes and accounts to be returned to you before maturity for collection, and all proceeds as collected must be applied to the payment of your obligation to us, whether the same shall have matured or not. Homestead and all other exemptions are hereby waived as to any debt arising under this contract. And it is further agreed that all fertilizers shipped to you as well as all notes, accounts, cash or other proceeds from the sale of said fertilizers, which may at any·time be in your possession, or in the possession of your representative, are our property, to be held by you as our agent in trust for the payment of your obligation to us, the title thereto shall not pass until your obligation to us is paid."

Pursuant to this contract, the American Agricultural Chemical Company delivered to the bankrupts fertilizers to the value of $9,-358.16. On June 20, 1914, Floyd & Hayes executed and delivered to the company an assignment of the notes, mortgages and open accounts, and turned over with the assignment the notes and mortgages and a list thereof. About September 1, 1914, the notes and mortgages were returned to Floyd & Hayes for collection and a trust receipt for them was taken. Prior to filing the petition in bankruptcy the bankrupts had collected on the accounts, notes and mortgages and turned over to the company in money and cotton $1,976.18.

Floyd & Hayes were adjudged bankrupts on January 1, 1915. The contract was not recorded, and the question is whether the company is entitled to hold the notes, mortgages and book accounts against the trustee in bankruptcy.

[1, 2] Practically the same question arose as to book accounts in Townsend v. Ashepoo Fertilizer Co., 212 Fed. 97, 128 C. C. A. 613, and this court held that, under the broad terms of the South Carolina recording statutes, record of such a paper in the nature of a mortgage of accounts was necessary to its validity against subsequent

creditors and purchasers without notice. The principle which the court thought applicable was thus stated:

"Nothing is better settled than that a creditor owns debts owing to him as property; and we are unable to see what warrant the court would have to exclude such property from the operation of a statute covering all personal property, on the ground that the property is choses in action and intangible. Secret liens may be valid in the absence of a statute condemning them. Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. 339. But they are under just condemnation in the business world, and we are not inclined to indulge refinements in the interpretation of the statute in order to protect those who fail to record their papers, and then when disaster comes bring them out against subsequent creditors. Besides, nothing is more plainly within the mischief at which the statute was directed than an unrecorded mortgage of a merchant's accounts, especially of the accounts of a merchant like Roof doing what is known as an advancing business. All know that the debts owing to such a merchant constitute an important asset, sometimes the chief asset, on which his credit rests, and those who credit him do so on the faith of these debts as his property."

The court was not inadvertent to the cases of Williams v. Paysinger, 15 S. C. 171, and Patterson v. Rabb, 38 S. C. 138, 17 S. E. 463, 19 L. R. A. 831, and of course recognized their binding authority. In these cases there was an assignment and delivery of a note or bond and the mortgage securing it, and it was held, in accordance with the general rule, that the recording of the assignment was not necessary to the protection of the assignee against those who dealt with the original mortgagee as if he were the owner. Booth v. Kehoe, 71 N. Y. 341; Kirkland v. Brune, 31 Grat. (Va.) 126; Tingle v. Fisher, 20 W. Va. 497; Brady v. State, 26 Md. 290; Bacon v. Bonham, 27 N. J. Eq. 209; National Bank v. Purifier Co., 84 Mich. 364, 47 N. W. 502. But it seemed to us that a transaction of that sort might well be distinguished from a written contract providing that goods sold to a merchant should remain the property of the seller and that all accounts or other evidences of indebtedness taken for the goods "shall represent the goods sold" and remain the property of the seller as security for his debt. If not distinguishable, a merchant doing an advancing business of $50,000 a year and carrying a stock of goods of $10,000 may, by an unrecorded blanket mortgage of all his book accounts and other choses in action then in existence or thereafter made, completely deceive the business public and subsequent creditors and purchasers.

Since the decision of Townsend v. Ashepoo Fertilizer Co., supra, however, and probably in view of that decision, the Supreme Court of South Carolina has used this language in Carolina Nat. Bank v. City of Greenville, 97 S. C. 291, 81 S. E. 634:

"The first proposition argued by the appellant's attorneys is that the assignment executed by Bowe & Page on the 2d of September, 1910, in favor of the plaintiff, was null and void, on the ground that it was not recorded. Waiving the objection that this question is not properly before the court for consideration, for the reason that it was not set up as a defense, the court takes this opportunity to reaffirm the doctrine, already settled in this state, that the assignment of a chose in action, is not embraced within the provisions of the recording acts, as will appear by reference to the cases of Williams & Co. v. Paysinger, 15 S. C. 171, and Patterson v. Rabb, 38 S. C. 138, 17 S. E. 463, 19 L. R. A. 831. The case of Williams & Co. v. Paysinger, supra, was cited with approval in Singleton v. Singleton, 60 S. C. at page 235, 38 S. E. 462."

The contract assigned to which the Supreme Court of South Carolina referred was one made by Bowe & Page with the city of Greenville for street paving, and the payments for which it provided from the city of Greenville seemed to constitute the main assets of the business in which the contractors were engaged. The language of the court in this case must be regarded as laying down a construction of the South Carolina statute contrary to that adopted by this court in Townsend v. Ashepoo Fertilizer Co., supra; and the construction of the state court is controlling. We think the District Court was right in so regarding it, and holding that the recording statutes of South Carolina have no application to the reservation of title or assignment of the choses in action claimed by the appellee under its contract with Floyd & Hayes.

Affirmed.