## In re ROSENTHAL.

## In re GEORGIA RAILROAD BANK.

### (District Court, S. D. Georgia. November 1, 1916.)

1. BANKRUPTCY ☞184(2)—PROPERTY ACQUIRED BY TRUSTEE—TRANSFERS—NECESSITY OF RECORDING—CHOSE IN ACTION.

Under the laws of South Carolina, which govern the necessity for recording an assignment of a bond for title to land in that state, though executed in another state by an assignor who subsequently became bankrupt, a chose in action, or an assignment thereof, need not be recorded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. ☞184(2).]

2. BANKRUPTCY ☞184(2)—PROPERTY ACQUIRED BY TRUSTEE—TRANSFERS—NECESSITY OF RECORDING—ASSIGNMENT OF BOND FOR TITLE—"CHOSE IN ACTION."

Under the laws of South Carolina, a bond for title is not a mere "chose in action," but conveys a substantial interest in the land, and Civ. Code 1912, § 3542, requiring all conveyances of lands and all mortgages or instruments in the nature of a mortgage of any property to be recorded, in order to be valid against subsequent creditors, requires an assignment of a bond for title, given by one who subsequently became a bankrupt to secure a debt, to be recorded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. ☞184(2).

For other definitions, see Words and Phrases, First and Second Series, Chose in Action.]

3. BANKRUPTCY ☞184(1)—PROPERTY ACQUIRED BY TRUSTEE—TRANSFERS—SUFFICIENCY OF RECORD.

Under Civ. Code S. C. 1912, § 1352, providing that, before any instrument can be recorded, the execution shall be proved by the affidavit of the subscribing witness, the recording of such assignment for title, without it having been proved in the manner required, is a nullity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 275; Dec. Dig. ☞184(1).]

4. BANKRUPTCY ☞353—DISTRIBUTION OF ASSETS—PROPERTY AFFECTED BY VOID LIEN.

Under Civ. Code S. C. 1912, § 2535, providing that instruments required thereby to be recorded shall be valid, so as to affect the rights of subsequent creditors or purchasers, only when recorded within 10 days from the time of such delivery or execution, and Bankr. Act July 1, 1898, c. 541, § 47, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), vesting the trustee with the rights of lien creditors, the proceeds of property affected by a lien, which was not recorded so as to give it a preference, must be distributed among the creditors of the bankrupt without distinction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 541–544; Dec. Dig. ☞353.]

In Bankruptcy. In the matter of A. Rosenthal, bankrupt. On petition to review an order of the referee allowing the claim of the Georgia Railroad Bank as a secured claim. Order reversed and set aside.

Cumming & Hull and C. H. & R. S. Cohen, all of Augusta, Ga., for Georgia Railroad Bank.

P. C. O'Gorman and Abram Levy, both of Augusta, Ga., for L. Koppel.

S. H. Myers, of Augusta, Ga., for bankrupt.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LAMBDIN, District Judge. The matter before me is a petition to review an order of the referee allowing the claim of the Georgia Railroad Bank as a secured claim and holding that the lien claimed by it on certain real estate in the state of South Carolina is valid. A. Rosenthal, the bankrupt, who lived in Augusta, Ga., but who owned an abattoir plant located across the Savannah river in South Carolina, filed his petition in bankruptcy on the 30th day of July, 1913. In schedule A (2), he listed the Georgia Railroad Bank as a secured creditor, describing the securities, as follows:

"Mortgage on real estate and plant in North Augusta, S. O. [being the property involved in this matter], and equity in real estate and plant, Thirteenth and Market streets, Augusta, Ga.; value of securities $20,000, and amount of debts $14,950."

In schedule B (1), he listed the property in Augusta, Ga., and also "North Augusta, abattoir plant" (being the property involved in this matter), naming as incumbrances thereon "Mortgage to Georgia Railroad Bank and Jacob Phinizy," referring to schedule A (2), "estimated value, $10,000."

The evidence shows that on the 3d day of July, 1911, Mrs. Mattie B. Mealing executed to said Rosenthal a bond for title in which she obligated herself in the penal sum of $4,000 to convey to A. Rosenthal a tract of three acres of land in Schultz township, Aiken county, S. C. (describing same), on condition that Rosenthal should pay her the sum of $2,000 on certain dates specified in the bond for title. This bond for title was properly witnessed and duly probated, and was recorded in the proper registry office in South Carolina, as required by the laws of that state. On the 10th day of May, 1912, Rosenthal transferred and assigned to the National Bank of Augusta "all his right, title, and interest in, to, and under" said bond for title; said transfer being made, as stated therein, for the purpose of securing the repayment to said bank of a then existing indebtedness, as well as for the purpose of securing any future indebtedness due by him to said bank. Said transfer was not probated as required by the laws of South Carolina. Subsequently, on the 25th day of July, 1912, the National Bank of Augusta, in consideration of the payment by the Georgia Railroad Bank of the indebtedness due to the National Bank by said Rosenthal (the said Rosenthal joining therein in consideration of the payment of said indebtedness), and to better secure the Georgia Railroad Bank in the repayment of the sum so advanced for his benefit, and also for the purpose of securing any and all other indebtedness he might at any time owe the said Georgia Railroad Bank, transferred and assigned to said Georgia Railroad Bank "all the right, title, and interest of said the National Bank of Augusta and of said A. Rosenthal in and to" said bond for title. Both of said transfers were attached to the original bond, and the first transfer, although not probated, was recorded in the proper registry office in South Carolina along with the bond for title; but the last transfer was not recorded. Rosenthal went into possession of the three acres of land in question located in South Carolina, and made extensive improvements thereon, and erected an abattoir on same, such improvements costing about $15,000, and the ma-

chinery about $5,000 in addition. On July 30, 1913, he went into bankruptcy, and in due course his trustee applied for leave to sell the above-named real estate, and the same was sold and purchased by one Lesser at the price of $6,000. The bank at the proper time filed its proof of indebtedness against the bankrupt, claiming that on account of the above-mentioned transfers it held said real estate as security for its indebtedness against Rosenthal. L. Koppel, a creditor, objected to the claim upon various grounds, and after a hearing the referee overruled the objections, and filed an opinion and an order, in which he held that the bank's lien on said real estate was good. The petition for review challenges the correctness of this order.

It appears from the evidence that, when the last note which Rosenthal owed Mrs. Mealing for the property fell due, the bankrupt applied to Dr. Mealing, the husband of the obligor in the bond, asking for the renewal of this note, which was refused. Subsequently Rosenthal paid this last note, and Dr. Mealing testified that at the time he called up Mr. Phinizy, the president of the Georgia Railroad Bank, by telephone, and asked him if he should make the deed to Rosenthal, and that Mr. Phinizy's reply was that he might do as Rosenthal wished; that he (Phinizy) had nothing to do with it. Mrs. Mealing then received the balance of the purchase money, and made the deed to the property to Rosenthal, and delivered same to him on March 4, 1913, and he in turn on the same day delivered the deed to one Martin, assistant cashier of the bank. This deed was never recorded, but remained in the custody of the bank. Mr. Phinizy testified that he had no recollection of any telephone conversation with Dr. Mealing, and that he had not knowingly waived any of the rights of the bank in the bond for title, and that he had not consented to the making of the deed from Mrs. Mealing to Rosenthal, and did not know that such a deed had been made until some months later, when Rosenthal went into bankruptcy. The referee in his opinion concludes that both Mr. Phinizy and Dr. Mealing were honest in their testimony, and that it was quite possible that Dr. Mealing had his telephone conversation with some other person, as there are several Messrs. Phinizy in Augusta. The referee found, therefore, that the deed from Mrs. Mealing to Rosenthal was made without the consent of the bank, and that the execution of the deed did not deprive the bank of the security which it already held in the transfers of the bond for title. I am inclined to think that the referee was correct in holding that the rights of the bank growing out of the transfers which it held to the bond for title in question were not waived by the execution of this deed. In other words, the bank still held to its former security. However, the knowledge of the assistant cashier of the execution and delivery of the deed to Rosenthal should be imputed to the bank. The court will discuss the question growing out of the delivery of the deed further on in this opinion.

The referee in his opinion correctly stated as follows:

"The transfer of the bond for title operated to vest in the bank all the equity that Rosenthal had in the land. It was always in contemplation that the equity should be enlarged from time to time by the successive payments of the purchase money. Whatever additional interest Rosenthal acquired

with these payments became automatically subject to the rights of the bank, and, when he got from Mrs. Mealing full title, that also was subject to the bank's claim."

[1] 1. There is only one question in this case, as the court sees it, and that is whether, under the laws of South Carolina, the transfer of the bond for title in question, made originally by the bankrupt to the National Bank of Augusta, and the subsequent transfer to the Georgia Railroad Bank, were required to be recorded or not. As the land involved in this case is located in South Carolina, the transaction is, of course, governed by the laws of that state. It is contended by the Georgia Railroad Bank that the bond for title in question from Mrs. Mealing to Rosenthal was a mere chose in action, and that neither this bond, nor the transfer of same, was required to be recorded by the laws of South Carolina. The Supreme Court of South Carolina, in the case of Bank v. Greenville, 97 S. C. 291, 81 S. E. 634, holds that a chose in action in South Carolina is not required to be recorded, and therefore an assignment thereof would not have to be recorded. Judge Smith, of the Eastern District of South Carolina in Re Floyd & Hayes (D. C.) 225 Fed. 262, followed this decision, and the Circuit Court of Appeals of the Fourth Circuit, in 232 Fed. 119, 146 C. C. A. 311, affirmed the opinion of Judge Smith; the case appearing in the Circuit Court of Appeals under the style of Ward v. American Agricultural Chemical Company.

[2] If, therefore, the bond for title from Mrs. Mealing to the bankrupt was a mere chose in action, neither this bond, nor the transfer of same as security for debt, would, under the decisions cited, which are controlling, be required to be recorded under the laws of South Carolina.

A bond for title is a somewhat anomalous instrument. In one sense of the word, it is a mere chose in action, as it is an obligation to make title, and if the obligor fails to comply with his bond, the obligee may bring suit thereon, as upon any other bond or chose in action. Yet, under the decisions of the courts, the effect of the execution of a bond for title to the purchaser of real estate is really to give to the purchaser an interest in such real estate proportionate to the amount paid, and when the purchaser under such bond pays the entire amount of the purchase money, he then owns the entire interest in the land and has a good equitable title thereto. In this case, as stated above, the bankrupt, after purchasing the land, went into possession of same, and put some $20,000 worth of improvements and machinery upon same before he completed his payments. It is clear, therefore, that he had a very substantial interest in the land. In effect, he was the virtual owner of the property, and the vendor only held his notes as security for the balance of the purchase money. As stated in Tiffany on Real Property, page 264, § 110:

"Such a contract in equity converts the land into money, and the money into land, so that thereafter the vendor's interest is personalty, and the vendee's interest is realty."

And as stated by the Supreme Court of South Carolina in the case of Lipscomb et al. v. Goode, 57 S. C. 182, 35 S. E. 493:

"The vendor, under a bond for title to convey land upon the payment of the purchase price, becomes the mortgagee, and the vendee becomes the mortgagor."

The effect, therefore, of the execution of this bond for title upon the payment of part of the purchase price thereon, and the possession and improvement of the property by the bankrupt, was to give him a real and substantial interest in the land, and such interest as he could sell or mortgage. The Supreme Court of South Carolina, in the case of Lipscomb et al. v. Goode, supra, held that the obligor in the bond under such circumstances could execute a second mortgage on the land; the claim of the vendor being in the nature of a first mortgage. The rule is also laid down in 27 Cyc. p. 981, as follows:

"Where a contract for the purchase of real estate, or a bond for title, is assigned to a third person as security for a debt, and with an agreement to reassign on payment of the debt, it constitutes in equity a mortgage on the assignor's equitable title to the land in question; but here, as in other cases, the question whether the transaction creates an equitable mortgage depends upon the intention of the parties in that behalf, and this is to be determined by a consideration of the circumstances attending it."

The Supreme Court of South Carolina lays down the same rule in the following language:

"Where one gets possession of land under a contract of purchase with bond for titles, or, perhaps, even under a mere contract of purchase without the bond, in terms, for titles, he may have such an equitable interest therein as would be the subject of mortgage; and if it appeared that such was the intention of the parties here, that is, that Murphy intended to mortgage his equitable interest in the land to the plaintiff, and give him a specific lien thereon, it might possibly be enforced." Gilkerson v. Connor, 24 S. C. 321; Peay v. Seigler, 48 S. C. 496, 26 S. E. 885, 59 Am. St. Rep. 731.

No particular form is necessary in South Carolina for a mortgage as between the parties. It is only necessary to have it recorded so as to affect third persons. Bryce v. Massey, 35 S. C. 127, 14 S. E. 768; Arthur v. Screven, 39 S. C. 77, 17 S. E. 640.

Under these authorities, the bankrupt was the equitable owner of a substantial interest in the real estate and premises, and when he paid up the balance of the purchase money on March 4, 1913, he became the equitable owner of the entire interest in the premises, and when the deed was made to him, his equitable interest was merged into a perfect legal title. His intention was to borrow the money from the bank, and the bank's intention was to lend him the money, on the faith, originally, of his equitable ownership of an interest in the land, which equitable ownership gradually ripened into a complete equitable interest, and then into a complete legal title. The bankrupt testified that he carried the deed to the bank with the intention that the bank should hold it as security for the debt he owed it. "It was my [the bankrupt's] intention and also the bank's. * * * I knew the bank was entitled to the land when I paid the balance of the purchase money. The bank had required me to bring the deed to it."

The statute of South Carolina, omitting the immaterial portions, governing the recording of instruments in that state, as set out in the Civil Code of that state, is in the following language:

"Sec. 3542.—*What Instruments are to be Recorded—When, Where, and Effect.*—All deeds of conveyance of lands, tenements or hereditaments, either in fee simple or for life; all deeds of trust or instruments in writing, conveying either real or personal estate, and creating a trust or trusts in regard to such property, or charging or incumbering the same; all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal; * * * and, generally, all instruments in writing now required by law to be recorded in the office of register of mesne conveyances, or clerk of court in those counties where the office of register of mesne conveyances has been abolished, or in the office of the secretary of state, delivered or executed on and after the first day of May in the year of our Lord, one thousand nine hundred and nine, shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, only when recorded within ten days from the time of such delivery or execution in the office of the register of mesne conveyance or clerk of court of the county where the property affected thereby is situated, in the case of real estate: * * * Provided, nevertheless, that the recording and record of the above mentioned deeds or instruments of writing subsequent to the expiration of said ten days shall, from the date of such record, operate as notice to all who may subsequently thereto become creditors or purchasers."

We are clear in our mind that this statute required the original bond for title from Mrs. Mealing to the bankrupt to be recorded; but, however this may be, it certainly required the transfer of the bond to the bank as security for Rosenthal's indebtedness to be recorded. Certainly these transfers had the effect of "charging or incumbering" the land or Rosenthal's interest in same, and these transfers were also "mortgages or instruments in writing in the nature of a mortgage," on said property or Rosenthal's interest in same within the meaning of the South Carolina statute; such interest under the circumstances, being real estate.

[3] The first transfer, to the National Bank of Augusta, was actually recorded, but improperly so; the last transfer, to the Georgia Railroad Bank, was not recorded. Section 1352 of the South Carolina Code provides that:

"Before any deed or other instrument in writing can be recorded in this state, the execution thereof shall be first proved by the affidavit of a subscribing witness to said instrument, taken before some officer within this state competent to administer an oath. If the affidavit be taken without the limits of this state, it may be before a commissioner," etc.

The first transfer, which was recorded, was not probated in accordance with the provisions of the South Carolina Code, and therefore its record was a nullity. Watts v. Whetstone, 79 S. C. 357, 60 S. E. 703; Woolfolk v. Graniteville Mills, 22 S. C. 332.

From the foregoing authorities, the court has therefore reached the conclusion that the transfers of the bond for title in question should, under the laws of the state of South Carolina, have been recorded, and that the record of the first transfer was a nullity, and the last transfer was not recorded, and, even if recorded, the record was likewise a nullity, because not properly probated, as required by the statute.

[4] 2. The next question is as to the effect of the transfers not being properly recorded. Section 3542 of the South Carolina Code, quoted above, provides that such instruments—

"shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple creditors)

or purchasers for valuable consideration without notice, *only* when recorded within ten days from the time of such delivery or execution," etc.

Before the passage of the amendment of 1910 to the Bankruptcy Act, which vested trustees with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, it was held by the federal courts having jurisdiction in South Carolina that the failure to record such instruments was to render same invalid as against all subsequent creditors, and that the fund arising from the mortgaged property should be distributed among such subsequent creditors, to the exclusion of both antecedent creditors and the mortgagee. In re Cannon (D. C.) 121 Fed. 582; Simmons v. Greer (C. C. A. 4th Cir.) 174 Fed. 654, 98 C. C. A. 408, affirming the same case in the District Court, reported in 164 Fed. 300.

Both of these cases arose, however, before the passage of the above-mentioned amendment of 1910, vesting the trustee with the rights of a lien creditor. Since that amendment the Circuit Court of Appeals of the Fourth Circuit, which embraces South Carolina, in passing upon a similar question in the case of Townsend v. Ashepoo Fertilizer Co., 212 Fed. 97, 128 C. C. A. 613, held that a mortgage not recorded in South Carolina was invalid against a trustee in bankruptcy; the concluding sentence in the opinion being as follows:

"It follows that the proceeds of the property herein involved must be distributed among all of the creditors of the bankrupt without distinction."

Judge Johnson, of the Western District of South Carolina, has recently held to the same effect. In re M. L. B. Sturkey Co. (D. C.) 224 Fed. 251.

The question of whether a seal was attached to the transfers, or not, is immaterial under a recent statute of South Carolina embodied in section 2535 of the Civil Code of that state, which provides as follows:

"Sec. 2535.—*What Considered Sealed Instruments.*—Whenever it shall appear from the attestation clause or from the other parts of any instrument in writing that it was the intention of the party or parties thereto that said instrument should be a sealed instrument, then said instrument shall be construed to be, and shall have the effect of, a sealed instrument, although no seal be actually attached."

Giving due effect to the recording statutes of South Carolina and to the purposes of same, the foregoing conclusions are in accordance with the equities of the case. It appears that the bankrupt went into possession of the real estate in question under the bond for title in question, and placed something like $20,000 worth of improvements on it, and operated a business on same, and then in effect mortgaged the property to the bank as security for an indebtedness. This transfer or mortgage, however, was not recorded, so as to place the world upon notice of the incumbrance. Under the universal construction, therefore, of the statutes governing the recording of instruments, both in the United States courts and the federal courts, the failure to record the transfers was fatal to the lien of the bank. The court is of the opinion, as above stated, that even before the bankrupt had paid up all of the purchase money he had a substantial interest in the land,

and that the transfer of this interest at such a time as security for a debt should have been recorded. The case, however, became stronger against the bank when the bankrupt paid up the balance of the purchase money and thus became vested with the complete equitable title to the property, and still more so when he obtained legal title to the property, which was sufficient to vest a full, complete, and perfect title in him. As the matter then stood, he had title to the property, and yet there was an incumbrance on same (which the referee correctly held not to have been waived by the bank), and this incumbrance was not recorded.

The court, therefore, holds that the referee erred in not giving the proper construction to the recording statute of the state of South Carolina, and the order of the referee complained of is reversed and set aside.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.