### INDUSTRIAL FINANCE CORPORATION v. CAPPLEMANN.

### In re BURNS MOTOR CO.

(Circuit Court of Appeals, Fourth Circuit.   October 21, 1922.)

#### No. 1985.

1. **Courts ⊘∞366(1)—Rule of state courts as to recording instruments applied in bankruptcy court.**

   The holding of a state court as to the instruments which require recording under the state statutes is controlling.

2. **Bankruptcy ⊘∞184(2)—Holder of unrecorded mortgage cannot recover mortgaged property in possession of trustee.**

   The holder of an unrecorded mortgage or similar instrument, who has not taken possession before bankruptcy, cannot recover the mortgaged property in the possession of the trustee, even when the state statutes protect only subsequent lien creditors, and not subsequent simple contract creditors, from an unrecorded instrument, for under the bankruptcy statute from the filing of the petition the trustee stands in the shoes of a subsequent lien creditor without notice.

3. **Bankruptcy ⊘∞140(½)—Trustee entitled to recover property taken by holder of unrecorded trust receipt.**

   Under Bankruptcy Act, §§ 47, 70 (Comp. St. §§ 9631, 9654), and Civ. Code S. C. 1912, §§ 3542, 3740, as to unrecorded bailments, *held* that, where automobiles in possession of an automobile company under its unrecorded "trust receipts" running to a finance company were taken possession of by the finance company shortly before the automobile company's bankruptcy, the trustee in bankruptcy could recover them from the finance company as property of the bankrupt, for the trustee occupied the same position that a subsequent simple contract debtor would have had after he had obtained a judgment and issued execution, which had been returned unsatisfied after seizure of the property by the bailor, and the right to defeat an unrecorded lien or claim, given to such a creditor in such case by the state statute, accrues when the credit is extended, and cannot be destroyed by any subsequent action of the secret lienor or claimant, such as taking possession of the property.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston, in bankruptcy; Henry A. Middleton Smith, Judge.

Action by F. William Capplemann, as trustee of the Burns Motor Company, bankrupt, against the Industrial Finance Corporation. Judgment for plaintiff, and defendant brings error.   Affirmed.

W. C. McGowan, of Columbia, S. C. (Benet, Shand & McGowan, of Columbia, S. C., on the brief), for plaintiff in error.

C. W. McCants, of Columbia, S. C. (Barron, Frierson, McCants & Elliott, of Columbia, S. C., on the brief), for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

WOODS, Circuit Judge.   In February, 1921, Burns Motor Company, automobile dealers in Columbia, S. C., purchased from Studebaker Corporation six motor cars for cash, paid in this manner:   On arrival of bill of lading and sight draft of the Studebaker Corporation, Burns

⊘∞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Motor Company paid the Bank of Columbia 20 per cent. of the purchase price, and accepted a draft payable at a future day, drawn on it by the Industrial Finance Corporation, for the remaining 80 per cent. With this acceptance the Burns Motor Company executed a "trust receipt" for the bill of lading in these terms:

"In consideration thereof, it is agreed that the undersigned will hold said property in trust as the property of said Industrial Finance Corporation, for the purpose of storing said property in a clean, dry place, free of charge; that the undersigned has not the right to, and will not, operate or use said property of the Industrial Finance Corporation for demonstration or other purposes, nor loan, rent, mortgage, pledge, incumber, sell or deliver said property except as authorized herein; that the undersigned may sell said property for the account of the Industrial Finance Corporation or holder of said acceptance, for cash or current funds approved by Industrial Finance Corporation, in amount not less than the sum then due on said acceptance, including interest; that the undersigned, upon demand prior to such sale, will return said property unused and in good condition to the order of the Industrial Finance Corporation; that in the event said property shall be sold as provided herein, the undersigned will hold the proceeds thereof in trust and separate from his (its, their) funds, and will forthwith account for and pay over said proceeds or sufficient thereof to satisfy said acceptance with interest, to the Industrial Finance Corporation for the holder of said acceptance. It is understood that nothing herein shall prevent the undersigned, at the time he first takes possession of said vehicle, from driving it direct from warehouse, factory or railroad station to his place of business but at his own risk (except in case of theft or fire), in the event of loss or damage to said car or to other property or to persons."

The bank forwarded the acceptance and trust receipts with its own draft on the Industrial Finance Corporation, and the Industrial Finance Corporation paid the drafts. None of the papers were recorded.

On or about April 25, 1921, Industrial Finance Corporation being informed that Burns Motor Company had converted other Studebaker cars held by them on like trust receipts, it at once demanded possession of the six cars here in controversy. In pursuance of this demand five of the automobiles were delivered on April 30, 1921, and one on May 4, 1921. The attorneys for Industrial Finance Corporation gave a receipt for them in this form:

"Received of Burns Motor Company the following Studebaker automobiles. ⁂ ⁂ ⁂

"The above-mentioned automobiles are received for the account of the Industrial Finance Corporation under the terms of certain trust receipts held by said Industrial Finance Corporation, covering said cars, said receipts now being in the possession of the Bank of Columbia. It is understood and agreed that the interest of any person, persons or parties in said automobiles other than the Industrial Finance Corporation will be protected by said Industrial Finance Corporation before said automobiles are disposed of. The above applies particularly to the amounts of the purchase price of each car advanced by the Bank of Columbia."

According to agreed statement of facts, at the date of these receipts an audit of Burns Motor Company by certified accountants was in progress. This audit, dated May 11, 1921, showed insolvency of Burns Motor Company at the time that the Industrial Finance Corporation took possession of the cars. Insolvency was not then known to Industrial Finance Corporation, but suspicion of insolvency is shown by the statement of Coleman, owner of all the stock of Burns Motor Com-

pany, made at the time of the seizure, that if the audit showed solvency the business would be continued, if insolvency some other course would be pursued. Under an involuntary petition filed May 23, 1921, Burns Motor Company was adjudicated bankrupt May 24. There were creditors whose debts were contracted subsequent to the date of the trust receipt transaction, and before possession of the cars was taken by the Industrial Finance Corporation.

Cappelmann, trustee, brought this action to recover the cars on the grounds: (1) That the delivery of the cars to the Industrial Finance Corporation constituted an unlawful preference; (2) that the trust receipts were of no effect against subsequent creditors, and the taking of them by the Industrial Finance Corporation conferred no title or lien against such subsequent creditors. The District Court on the second ground adjudged the trustee entitled to recover the cars.

Section 47 of the Bankruptcy Statute, as amended in 1910 (9 Compiled Stat. § 9631), provides:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

Under section 70, Compiled Stat. § 9654:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication."

The following are the applicable statutes of South Carolina:

"3542. All deeds of conveyance of land, tenements or hereditaments, either in fee simple or for life; all deeds of trust or instruments in writing, conveying either real or personal estate, and creating a trust or trusts in regard to such property, or charging or incumbering the same; all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal * * * shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, only when recorded within ten days from the time of such delivery or execution in the office of the register of mesne conveyance or clerk of court. * * * "

"3740. Every agreement between the vendor and vendee, bailor or bailee of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages; but nothing herein contained shall apply to livery stable keepers, innkeepers, or any other persons letting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs or work or labor done thereon, or as a pledge or collateral to a loan." Code of 1912.

[1] The holding of the South Carolina court as to the instruments which require record under the statutes is controlling. Pullman's Car Co. v. Pennsylvania, 141 U. S. 18, 22, 11 Sup. Ct. 876, 35 L. Ed. 613;

Bryant v. Swofford Bros., 214 U. S. 279, 290, 291, 29 Sup. Ct. 614, 53 L. Ed. 997. That court has held that such an instrument as the trust receipt is in the nature of a conditional sale or bailment falling under section 3740 of the Code. Southern Music House v. Dusenbury, 27 S. C. 464, 470, 4 S. E. 60, 63; Wardlaw v. Troy Oil Mill, 74 S. C. 368, 372, 54 S. E. 658, 114 Am. St. Rep. 1004; Armour & Co. v. Ross, 78 S. C. 294, 58 S. E. 941, 1135. This court has already followed the construction of the state court. Townsend v. Ashepoo Fertilizer Co., 212 Fed. 97, 128 C. C. A. 613; Ward v. American Agricultural Chemical Co., 232 Fed. 119, 146 C. C. A. 311.

When a state recording statute, as construed by the state court, only provides for protection against unrecorded instruments of "lien creditors" or "creditors who have fastened a lien on the property," or "creditors armed with judicial process," or the like, it has been held that the trustee cannot recover the property when the holder of an unrecorded mortgage or other instrument requiring record acquires possession before the filing of the petition in bankruptcy. This holding is on the express ground that the rights of no creditors had attached to any of the property until the petition was filed; that the trustee did not until then acquire the right of a lien creditor, and therefore could not recover property which had bona fide passed from the possession and ownership of the bankrupt before the petition was filed. Hart v. Emmerson-Brantingham Co. (D. C.) 203 Fed. 60.

[2] But there is no dissent from the view that the holder of an unrecorded mortgage or similar instrument who has not taken possession before bankruptcy cannot recover the mortgaged property in the possession of the trustee, even when the state statutes protect only subsequent lien creditors, and not subsequent simple contract creditors, from an unrecorded instrument; for the reason that under the bankruptcy statute from the filing of the petition the trustee stands in the shoes of a subsequent lien creditor without notice. Potter Mfg. Co. v. Arthur, 220 Fed. 843, 846, 136 C. C. A. 589, Ann. Cas. 1916A, 1268; Massachusetts Bonding & Ins. Co. v. Kemper, 220 Fed. 847, 851, 136 C. C. A. 593; National Bank of Bakersfield v. Moore, 247 Fed. 913, 160 C. C. A. 103; In re American Steel Supply Syndicate (D. C.) 256 Fed. 876; In re Bettman-Johnson Co., 250 Fed. 657, 163 C. C. A. 3; Citizens' American Bank & Trust Co. v. Driscoll (C. C. A.) 279 Fed. 748; Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642, 36 Sup. Ct. 466, 60 L. Ed. 841.

[3] It would be difficult to frame a statute expressing more clearly and broadly than the South Carolina statutes express the intention to sweep away all secret liens, and claims set up under them against subsequent creditors. In their original form simple contract creditors were not expressly mentioned in these statutes, and the state court held that subsequent creditors meant lien creditors. King v. Fraser, 23 S. C. 543; Carraway v. Carraway, 27 S. C. 576, 5 S. E. 157. It was in view of this holding that the statutes were amended to include expressly in their protection subsequent simple contract creditors.

Bearing in mind that the trustee has precisely the same position that a subsequent simple contract creditor would have after he had ob-

tained a judgment and issued execution which had been returned unsatisfied, we reach the ultimate question on which the decision turns. Under the South Carolina statutes can the holder of an instrument constituting a conditional sale or bailment, undisclosed and unrecorded, who has enforced his conditional sale or bailment by taking possession of the property, hold it against a simple contract creditor who extended credit to the debtor after the execution of the unrecorded instrument without notice of it, and who obtained judgment and issued execution and had it returned unsatisfied after the seizure of the property by the conditional vendor or bailor?

It is important to observe that the Industrial Finance Corporation is not holding under any new contract in the relation of a purchaser for a present consideration or in consideration of an antecedent debt, but under a possession obtained by enforcement of its secret contract of conditional sale or bailment.

To sustain against a subsequent creditor the possession and title of the conditional vendor or bailor, so acquired by virtue of seizure under the unrecorded paper, evidently would in effect destroy the protection the statutes were intended to give to simple contract creditors against secret liens or claims. The holder of the instrument could withhold it from record, allow the debtor to deal with the property as his own, and contract debts on the faith of it, as in this case, and then by simple seizure of the property in enforcement of his secret lien or title make it valid against subsequent simple contract creditors in the teeth of the statutes declaring that it should be invalid.

The state court has expressly rejected such a construction, and announced the true principle in Blackwell v. Harrelson, 99 S. C. 264, 271, 84 S. E. 233, Ann. Cas. 1916E, 1263, holding that the rights of subsequent simple contract creditors for value without notice against conveyances or liens not recorded as required by the statute accrue when the credit is extended, and cannot be defeated by any subsequent action of the holder of the secret conveyance or lien. The federal decisions construing the South Carolina statutes apply the same construction. In re Cannon (D. C.) 121 Fed. 582; In re Clausson & Co. (D. C.) 164 Fed. 300; Simmons v. Greer, 174 Fed. 654, 98 C. C. A. 408; Townsend v. Ashepoo Fertilizer Co., 212 Fed. 97, 128 C. C. A. 613; Augusta Grocery Co. v. Southern Moline Plow Co., 213 Fed. 786, 130 C. C. A. 444; Ward v. American Agricultural Chemical Co., 232 Fed. 119, 146 C. C. A. 311. In Millikin v. Second National Bank of Baltimore, 206 Fed. 14, 124 C. C. A. 148, this court so construed a like Maryland statute.

This right of subsequent creditors fixed by the state statute is not a lien, but it is a right accruing when the debt is contracted to defeat an unrecorded lien. Being a vested right under the South Carolina statutes, it "could not be destroyed by the mere transfer of possession from one party to the contract to the other party thereto." This vested statutory right is no less under the protection of the law than the right to a specific lien, and the language above quoted from Rock Island Plow Co. v. Reardon, 222 U. S. 354, 364, 32 Sup. Ct. 164, 56 L. Ed. 231, is applicable. The test is thus stated in Martin v. Commercial

National Bank, 245 U. S. 513, 519, 38 Sup. Ct. 176, 178 (62 L. Ed. 441):

"It properly follows that before a trustee may avoid a transfer because of the provision in question he must in fact represent or be entitled to take the place of some creditor whose claim actually stood in a superior position to the challenged transfer while unrecorded and within the specified period."

The principle is forcibly stated and applied under the Missouri statute in Re Bennett (D. C.) 264 Fed. 533, 537.

If bankruptcy had not intervened, the remedy of subsequent creditors after they had obtained judgment and their executions had been returned unsatisfied would have been to file a bill in equity to subject to the payment of their debts the property of their debtor, taken from him in enforcement of the unrecorded instrument invalid against them. The bankruptcy court being a court of equity, the trustee is entitled to recover the automobiles, and to have the proceeds of their sale distributed among the creditors in accordance with their rights.

Affirmed.