### In re CANNON.

(District Court, D. South Carolina. March 12, 1903.)

1. BANKRUPTCY—UNRECORDED MORTGAGE—PROCEEDS OF MORTGAGED PROPERTY —DISTRIBUTION—SUBSEQUENT CREDITORS.

The property of a bankrupt was covered by an unrecorded chattel mortgage, and on the sale of the property by the trustee the proceeds were insufficient to pay the claims of creditors of the bankrupt, who became such after the execution of the mortgage. Code S. C. § 2456, provides that mortgages shall be valid, so as to affect the rights of subsequent creditors, only when recorded. *Held*, that as the mortgage was valid as against the creditors of the bankrupt, who were such when the mortgage was given, but was invalid as against all subsequent creditors, the fund arising from the property should be distributed among such subsequent creditors, to the exclusion of both the antecedent creditors and the mortgagee.

In Bankruptcy.

Willcox & Willcox, for mortgagee.
W. F. Clayton and W. H. Wells, for creditors.

BRAWLEY, District Judge. The court is asked to review the decision of the referee in a matter of law, upon the distribution of the fund in the hands of the trustee, arising from the proceeds of sale of the stock of goods of the above named bankrupt.

After the adjudication in bankruptcy, A. H. Douglass, in due course of proceeding for the administration of the bankrupt estate, set up a lien against the fund; claiming to hold a chattel mortgage upon the stock of merchandise. The validity of this mortgage was contested upon grounds not necessary now to be stated, and after due consideration it was held that the mortgage was a valid lien, it having

been duly executed for a valuable consideration, and not being obnoxious to any objections under the bankrupt law, and that the trustee stood in the place of the bankrupt, and was affected with all the claims, liens, and equities which would affect the debtor, and as between the bankrupt and the mortgagee, and as to all claims against the bankrupt arising prior to the execution of the mortgage, it was a valid lien upon the fund; but, inasmuch as the mortgage had not been recorded, the case went back to the referee, to ascertain whether there were any creditors subsequent to the date of the execution of the mortgage, and it is now here upon his report, which found that there were such subsequent creditors, and that the amount of the fund in the hands of the trustee is not sufficient to pay such subsequent creditors in full.

The question of the distribution of the fund was presented to the referee, and in his report he holds "that the entire fund should be divided pro rata among all creditors whose claims have been allowed, and that the dividend set apart to the antecedent creditors should be applied to the payment of the mortgage debt, and the dividend set apart to the subsequent creditors should be applied pro rata to the payment of their claims"; and the appeal challenges the correctness of this conclusion.

No direct authority upon the question at issue has been cited, and I have found none; and inasmuch as, after reflection, I have reached a conclusion differing from that of my first impression, and from the learned referee, whose opinion is always entitled to weight, it may be well to state the reasons which have led to a result which seems to be in contravention of the fundamental principles of the bankrupt law, which is designed to secure an equal distribution of the bankrupt's estate among all the creditors.

The question arises under the recording laws of South Carolina, which are now embodied in section 2456 of the Code, and provide as follows:

"All deeds of conveyance of lands * * * all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal * * * delivered or executed on or after the first day of March in the year of our Lord one thousand eight hundred and ninety-eight, shall be valid so as to affect from the time of such delivery or execution, the rights of subsequent creditors (whether lien creditors or simple contract creditors) * * * only when recorded within forty days from the time of such delivery, in the office of the clerk of court of the county where the property affected thereby is situated."

The fund arises from the property mortgaged, and it has been already decided that creditors antecedent to the mortgage cannot share in it, because as to them the mortgage is valid. It is said that the subsequent creditors are not entitled to take all of this fund, because they have no specific lien upon it; that as to them the mortgage is a mere nullity; and that their right is to share in the fund only to the extent to which they would be entitled if the mortgage had never been executed. And such contention would seem to be reasonable, but that view fails to take account of the true status of the parties, for, the mortgage being valid as to all creditors antecedent to its execution, the only claimants to the fund are the mortgagee and the sub-

sequent creditors. As between these two, then, which has the higher right? My conclusion is that by the terms of section 2456 the mortgage is valid; so far as to affect the rights of subsequent creditors, only when recorded within 40 days from the time of its execution, and, not having been recorded, it is invalid.

The mischief which the recording laws are intended to prevent is the obtaining of credit by reason of the ostensible ownership of property which in reality is covered by a secret lien, and the great object of all such laws is to give notice—notice to purchasers and notice to creditors who give credit on the faith of property. The first act in South Carolina relating to registry was passed October 8, 1698, and is entitled "An act to prevent deceits by double mortgages and conveyances of lands, negroes and chattels" (2 St. at Large, p. 137), and the preamble is as follows:

"Whereas the want or neglect of registring and recording of sales, conveyances and mortgages of lands and other goods and chattels hath encouraged and given opportunity to several knavish and necessitous persons to make two or more sales, conveyances and mortgages of the same plantation, negroes and other chattels, the first sale, conveyance and mortgage being in force and not discharged to several persons or considerable sums of money more than the same is worth, whereby buyers of plantations and lenders of money upon second or after mortgages do often loose their money and are put to great charges in suits of law and otherwise, for remedy whereof" it was provided that the sale or mortgage first recorded should be adjudged the first sale, etc.

The second act was that of March 8, 1785, relating to the recording of marriage deeds and contracts. Its preamble recited:

"Whereas the practice prevailing in this state of keeping marriage contracts and deeds in the hands of those interested therein hath been oftentimes injurious to creditors and others who have been induced to credit and trust persons under the presumption of their being possessed of an estate subject and liable to the payment of their just debts, for remedy whereof and to prevent such deceitful practices," etc. 4 St. at Large, p. 656.

Accordingly we find running all through the decisions in this state allusions to the prime object of the recording laws, as set forth in the quaint words of these old preambles.

In Steele v. Mansell, 6 Rich. Law, 453, Judge Wardlaw says:

"The theory of registry acts is not that an unregistered deed is a fraud (for, if it is fraudulent, it is, whether registered or not, void as to the persons defrauded by it), but that publicity is likely to prevent frauds; and therefore a neglect of the mode provided to give publicity is punished by conferring superior rights upon those who are most likely to suffer by concealment."

Chancellor Inglis, in McKnight v. Gordon, 13 Rich. Eq. 235, 94 Am. Dec. 164, says:

"The mischief, for the suppression of which recording laws have been contrived, consists in the fraud which 'knavish and necessitous persons' practice, in selling or mortgaging their lands or chattels for money or other valuable consideration, and, after they have thus divested themselves of all lawful power of disposition, availing themselves of the possession, or other apparent ownership, continued or acquired by them, to obtain, by a second sale or mortgage, or other equally unwarrantable use of the same property, money, or other value, from those who deal with them in ignorance of the former transaction, and of their consequent want or defect of title, and take either nothing whatever, or, at least, not what they bargained or were in-

duced to look for by their dealing, but, on the contrary, in the language of the old statutes, 'do often lose their money and are put to great charges in suits of law and otherwise.' The language of the statutes everywhere, and especially in their preambles, sufficiently evince this. ＊ ＊ ＊

"To the consummation of the knavery in fact or in law, as the case may be, the silent mortgagee, who fails to put his mortgage upon the public records, contributes equally in the two cases. No doubt, the actual harm will be, and often is, the result of mere neglect, without 'knavish' purpose on the part of any one concerned, as may be well believed to be the case in the present instance. But the law can only frame general rules, having respect to external acts, badges, and results. It would be vain, in administering these, to undertake exploring the secret motives of parties for a test of their application."

In McCorkle v. Montgomery, 11 Rich. Eq. 132, Chancellor Dunkin says:

"Upon this subject the language of Chief Justice Marshall in Bayley v. Greenleaf, 7 Wheat. 46, 5 L. Ed. 393, is instructive. To the world, says he, the vendee appears to hold the property divested of any trust whatever, and credit is given him in confidence that the property is his own in equity as well as law. The vendor, relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some degree accessory to the fraud committed on the public by an act which exhibits the vendee as the complete owner of the property on which he claims a secret lien. It would seem inconsistent with the principles of equity and with the general spirit of our laws that such a lien should be set up in a court of chancery to the exclusion of bona fide creditors."

Chancellor Carroll, in the circuit decision reported in Williams v. Beard, 1 S. C. 313, says:

"The plain purpose of the act of 1843 [which was an act to amend the law in relation to registry] was to guard against loss and injury to subsequent creditors and purchasers from their dealing with the mortgagor under the delusion that he retained the absolute and unincumbered ownership of the property mortgaged."

To the same general effect are the decisions of the Supreme Court of the United States. An excerpt from the opinion of Chief Justice Marshall in Bayley v. Greenleaf has been already cited as quoted by Chancellor Dunkin. The concluding words of that opinion are as follows:

"In the United States the claims of creditors stand on high ground. There is not, perhaps, a state in the Union, the laws of which do not make all conveyances not recorded and all secret trusts void as to creditors, as well as subsequent purchasers without notice. To support the secret lien of a vendor against a creditor who is a mortgagee would be to counteract the spirit of these laws."

In Judson v. Corcoran, 17 How. 615, 15 L. Ed. 331, the court, referring to the negligence of the appellant in not presenting an assignment of a claim to the state department, as required by law, upheld the claim of a subsequent assignee, saying:

"The assignment was held up and operated as a latent and lurking transaction, calculated to circumvent subsequent assignees; and such would be its effect on Corcoran, were a priority accorded to it by our decree."

In Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, which was a controversy between the assignee in bankruptcy of the mortgagor, execution creditors, and the mortgagee touching the application of the fund in court, derived from the sale of personal property covered

by a mortgage not filed in accordance with the laws of New York, the court held that a chattel mortgage not filed as required by the provisions of the statute was void as to creditors and subsequent purchasers in good faith, and quotes with approval the Circuit Justice, who said that the statute had "imposed a rigid and unbending condition, to wit, a filing in the place where the mortgagors actually reside, as a preliminary to the validity of the mortgage. Whether this condition is wise or not—whether convenient or difficult of performance—is not for the courts to say. The statute exacts it, and the courts must see that it is performed." In many of the states the retaining of possession of personal chattels by the mortgagor, whether the mortgage is recorded or not, is considered prima facie a badge of fraud, but that is not the rule in South Carolina. The mortgage is good between the parties to it, although it does not conform to the requirements of the statute relating to the recording of it, and the omission only renders it void as to subsequent creditors. Certain expressions in the opinion in King v. Fraser, 23 S. C. 543, give support to the contrary view. That decision was a surprise to the profession, which generally regarded the dissenting opinion of the late Chief Justice, who agreed with the view of the very able Circuit Judge, who confirmed the learned and elaborate report of the master, as presenting the better view; and the amendment to the recording laws adopted in 1898 makes our registration law conform to the views expressed in the dissenting opinion, and, as the case now before the court arose subsequent to said amendment, it is not considered that the doctrines announced in King v. Fraser are of any binding authority.

The possession of property which can be looked to for the payment of debts is a large element of credit, and goods are sold and money loaned to those who apparently have the means of paying, and the registry laws are intended to give to creditors the means of knowing whether there are any incumbrances upon property which is apparently subject to their debts, and persons who fail, purposely or carelessly, to record their liens, and thereby lead others to give credit because of the ostensible means of paying, cannot be heard to complain if they suffer pains and penalties which follow their intentional concealment or negligence.

The error lying at the base of the referee's report is in the view that subsequent creditors not having earned any priority by superior diligence, or having any specific lien upon the fund, the mortgage, as to them, is to be considered as nonexistent, and therefore they are entitled only to such a pro rata share of the fund as they would have received if all the creditors had participated in it. But as already stated, the mortgage, in so far as it affects the mortgagor and the antecedent creditors, is a valid mortgage; and it would follow that if there were no subsequent creditors the mortgagee would be entitled to the whole fund, the antecedent creditors not being entitled to share in it at all, and, in holding that the mortgagee is entitled to take such part of the fund as would be distributable among the antecedent creditors, it could only be by virtue of some right of subrogation; but there can be no subrogation to rights which do not

exist; and, as already held, all claims of the antecedent creditors are extinguished by the mortgage, and, as between the mortgagee and the subsequent creditors, the rights of the latter must prevail.

It follows that the report of the referee must be set aside, and the fund distributed in accordance with this opinion, and it is so ordered.