**STOKES et al. v. SEDBERRY et al.**

**SEDBERRY et al. v. WALKER et al.**

(Circuit Court of Appeals, Sixth Circuit. October 14, 1921.)

Nos. 3503, 3504.

1. **Bankruptcy ☞440—Determination of attorney's fee held only step in administration of bankrupt estate, and not appealable.**

Where trustee in bankruptcy employed attorney to set aside an alleged fraudulent conveyance of land on a 50 per cent. contingent basis, disposition of questions whether the 50 per cent. contract was valid, if it was not, whether attorney could recover the value of his services upon a quantum meruit, whether the fee should be charged against the 100 per cent. otherwise to be disbursed to creditors or against the surplus to be returned to the grantee, and what the amount of the fee should be, *held* a

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

step in the administration of the estate, rather than a controversy arising between adverse parties, and appeals therefrom must be dismissed; petition to revise being the proper remedy.

2. **Bankruptcy ⬅482(1)—Value of service of attorney determined at final settlement.**

The value to a bankrupt estate of the services of the trustee's attorney is ordinarily to be determined by the court when the estate is finally settled, under Bankruptcy Act, § 62 (Comp. St. § 9646).

3. **Bankruptcy ⬅482(2)—Order of referee as to attorney's fee held invalid.**

A referee's order in voluntary bankruptcy proceedings authorizing a contract between trustee in bankruptcy and his attorney for a 50 per cent. contingent fee, not made at a meeting of the creditors, but wholly ex parte, without notice to any parties adversely interested, would not render such contract, subsequently entered into by the trustee, valid.

4. **Bankrupcy ⬅482(1)—Recovery under quantum meruit under champertous contract.**

Where trustee in bankrupcy enters into a champertous contract with an attorney, such contract is not so inherently vicious in its tendency as to forbid the court finally to award to the attorney such compensation as it thinks right, because all such contracts are entered into subject to the approval of the court.

5. **Fraudulent conveyances ⬅319—Attorney fees payable out of debts recovered.**

In Tennessee, where a conveyance of property is set aside as fraudulent as to creditors, counsel fees must be paid out of the debts recovered, and cannot be charged against the surplus, under Shannon's Code Tenn. §§ 6097, 6099.

6. **Bankruptcy ⬅474—Counsel fees not payable out of surplus on setting aside fraudulent conveyance.**

Under Bankruptcy Act, §§ 67e, 70e (Comp. St. §§ 9651, 9654), if a bankrupt in Tennessee fraudulently conveyed property to his wife within four months before bankruptcy, on setting aside the conveyance, attorney's fees, as expenses of the trustee, are a lien upon the surplus left after payment of debts of defrauded creditors; but where the fraudulent conveyance was made more than four months before bankruptcy, attorney's fees must be paid out of the debts recovered, and cannot be charged against the surplus, in view of Shannon's Code Tenn. §§ 6097, 6099.

7. **Pleading ⬅235—Order would justify amendment of petition nunc pro tunc.**

In a bankruptcy proceeding, where the judge permitted bankrupt and wife on argument to change their position and to claim that attorney's fee in proceeding to set aside alleged fraudulent conveyance to wife should be paid by the creditor, instead of out of the surplus, this would fully justify an amendment of the bankrupt and wife's petition nunc pro tunc; such petition originally being on the theory that such fee should be paid out of the surplus.

8. **Bankruptcy ⬅474—Bankrupt and wife not bound by agreement that attorney's fee should be paid out of surplus on setting aside fraudulent conveyance.**

An understanding between bankrupt, wife, and others that attorney's fee for setting aside a fraudulent conveyance to bankrupt's wife should be paid out of surplus, which was a part of a general compromise arrangement, ought not to bind the bankrupt and wife, where they understood that the attorney was to ask the allowance of only reasonable compensation, while the attorney in fact intended to insist upon a 50 per cent. contract with the trustee.

9. **Bankruptcy ⬅446—Discretion of trial judge as to attorney's fee not reviewed on petition to revise.**

So far as the amount of a fee of an attorney in a bankruptcy proceeding involves the discretion of the trial judge, or his conclusion of fact as

---

to what was reasonable, the Circuit Court of Appeals cannot review it on a petition to revise in a matter of law.

**10. Bankruptcy ⊙⇒482(2)—Liberal fee to attorney suing on contingent basis.**

Where an attorney agreed with trustee in voluntary bankruptcy not to charge for his services unless he recovered property to be sued for, and there was supposedly small chance of successful outcome, there was justification for a liberal attorney's fee; but an attorney's fee of $7,500 must be held excessive, where the District Judge considered the amount of recovery as $29,000, while it should be treated as $21,500.

**11. Bankruptcy ⊙⇒442—No complaint of allowance to trustee for expenses.**

Bankrupt and wife cannot, on petition to revise order, be heard to complain of an allowance to trustee of $750 for expenses of litigation without itemization, where trustee asked for $1,200, and on objection of bankrupt and wife, referee held the charge not properly itemized, but thought that $750 would be a proper amount, and said he would make that allowance, but, if any party still thought there ought to be further itemization, application might be made, and he would consider it; no such application being made.

Petitions to Revise an Order of, and Appeals from, the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

In the matter of the bankruptcy of J. H. Sedberry; Thomas G. Walker, trustee. Order entered concerning attorney's fee of Jordan Stokes, Jr. Jordan Stokes, Jr., and others and Sedberry and others separately petition to revise and appeal. Order modified, and case remanded.

Clarence T. Boyd and John R. Aust, both of Nashville, Tenn., for petitioners Stokes and others.

Norman Farrell, of Nashville, Tenn., for petitioners Sedberry and others.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Sedberry, the bankrupt, caused the title to a farm and the personal property thereon to be conveyed to his wife. At a later date he became financially involved and filed a voluntary bankruptcy petition. The trustee in bankruptcy entered into a contract with Mr. Stokes, an attorney, to endeavor to recover the property. Accordingly, Mr. Stokes, in the name of the trustee, filed a bill in the state chancery court, alleging that the conveyance to Mrs. Sedberry was in fraud of creditors, and finally obtained a decree accordingly. The property which Mrs. Sedberry held and which was affected by this decree was worth about $100,000. The total claims against the bankrupt estate were about $21,500. The contract with Mr. Stokes provided for a contingent fee of 50 per cent. of the amount recovered, and specified that he should advance and pay all the expenses of the litigation, without liability therefor on the part of the trustee in case of failure. The questions upon which controversy arose, and which now remain important, were whether the 50 per cent. contract was valid; if it was not, whether the attorney could recover the value of his services as upon a quantum meruit; if he could, whether the fee allow-

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ed to him should be charged against the 100 per cent. otherwise to be disbursed to creditors or against the surplus to be returned to Mrs. Sedberry; and what the amount of the fee should be. The action of the referee in all these matters was taken before the District Judge on petition to review, and each party complains of the action of the District Judge; the complaints being both by appeals and by petitions to revise.

[1] The disposition of each one of the four questions above stated was a step in the administration of the estate rather than a controversy arising as between adverse parties. Both appeals must therefore be dismissed, and the cases stand for hearing upon the petitions to revise. Davidson v. Friedman (C. C. A. 6) 140 Fed. 853, 72 C. C. A. 553; Ohio Co. v. Switzer (C. C. A. 6) 153 Fed. 362, 82 C. C. A. 438; In re Linnane (C. C. A. 6) 242 Fed. 769, 771, 155 C. C. A. 357.

[2, 3] The attorney's contract with the trustee is attacked for champerty and maintenance, and as being, therefore, void. The question is elaborately argued, but we agree with the District Judge that it need not be decided. The contract was, for other reasons, invalid. It is not suggested that the trustee would have power on his own account to make such a contract, but it is said to have been authorized in advance by an order of the referee, and its validity is claimed to find sufficient support in this authority. The referee's order was not made at a meeting of the creditors, but wholly ex parte. Neither the creditors, who would very probably have to pay the fee, nor the bankrupt, who would have to pay it if the creditors did not, had any notice in the matter. The value to the estate of the services of a trustee's attorney is, ordinarily, to be determined by the court when the estate is finally settled. Bankruptcy Act, § 62 (Comp. St. § 9646). If there are exceptions to this rule, and if the trustee may ever make a contingent fee contract in advance, which may be valid because of approval at the time by the court or referee, we find no provision in the Bankruptcy Law which could give authority for such an order when made, as here, without any notice to any of the parties adversely interested. We conclude that the contract was invalid, and that there could be no recovery by virtue of it.

[4] Both the referee and the District Judge allowed Mr. Stokes a fee upon the quantum meruit theory. This result is attacked because the attorney insisted and is still insisting upon his right under the contract, and because the contract was champertous, and therefore he could have no recovery whatever. As between ordinary parties, there is ample authority for this position (Roller v. Murray, 112 Va. 780, 72 S. E. 665, 38 L. R. A. [N. S.] 1202, Ann. Cas. 1913B, 1088), and, for the purposes of this decision, we assume that, except for the considerations to be stated, that rule would obtain here, and also assume, without deciding, that the contract was champertous. We are not satisfied that an entire forfeiture of the fee must follow, in a court of bankruptcy, and under the special circumstances here existing. We understand that the tendency of champerty and maintenance to stir up litigation which otherwise would not be brought is the reason why contracts tainted therewith are so contrary to public policy that there can be no recovery

for the value of services rendered under them. This reason applies with full force to unsupervised contracts of attorneys with individuals acting in their own right; but not only was the proposed bringing of this suit approved by the referee, but every such contract, made between attorneys and a trustee in bankruptcy,. is made with knowledge that primarily the referee, and ultimately the District Court, must approve and must make an award before payment can be made. Each contract, therefore, in effect has written into it "subject to the approval of the court." We cannot think that such a contract, with this limitation and with this preliminary approval, is so inherently vicious in its tendency as to forbid the court finally to award to the attorney such compensation as it thinks right. It follows that Mr. Stokes was entitled to the reasonable value of his services.

Whether the fee should be charged against the fund devoted to pay the creditors, or should be added to that fund and charged against the surplus, is a question of difficulty, and often may be of importance. The District Judge here allowed a fee of $7,500.

[5] In Tennessee, a creditor, or a group of creditors, claiming that a debtor's conveyance of his property is fraudulent as to them, can file a bill in the nature of a creditors' bill and have their debts established as a lien against the property superior to the fraudulent conveyance. This is the extent of their right and remedy. The counsel fees must be paid out of the debts recovered and cannot be charged against the surplus. Shan. Code Tenn. §§ 6097, 6099; Bank v. Haller, 101 Tenn. 83, 52 S. W. 807; Douglas v. Bank, 97 Tenn. 148, 36 S. W. 874. Such is also the general rule. 20 Cyc. 825.

[6] Did it make a difference of $7,500 to these creditors and to Mrs. Sedberry whether the remedy was given through the state courts only or through bankruptcy? The grantee, who has held property for 20 years—as Mrs. Sedberry had done in this case—with knowledge that creditors may some time successfully complain, may ordinarily anticipate at least that the surplus over the amount of the debts, at the time when, if ever, the attack comes, will be immune. Such is the law of the state, and no direct provision of the Bankruptcy Law has been violated. It does not necessarily follow that the indirect effect of the Bankruptcy Law, when invoked, may not burden, and perhaps exhaust, this surplus; but that law should not be interpreted to bring such a result, unless that is its reasonably clear and certain effect. Two sections of the act deal with the remedies of creditors where there has been a transfer with intent to defraud. Section 67e (section 9651) refers only to such transfers as have been made within four months. It pronounces them null and void as against the creditors, and declares that the property shall be and remain a part of the assets of the estate of the bankrupt, and shall pass to the trustee, whose duty it shall be to recover and reclaim the same. This section is of no avail, where the transfer is more than four months old, but in such case the procedure can be only under section 70e (section 9654), which provides that the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided.

There seems to be a distinct difference in the theories of the two sec-

tions. It is the theory of section 67e that the bankruptcy reaches back four months, and that any preference or fraudulent conveyance made within that time is not a thing accomplished but is inchoate and is retroactively obliterated. The property conveyed is therefore always a part of the bankrupt's estate. It is the theory of section 70e that the Bankruptcy Law should not by indirection take away from any creditor any right which he has under the law of the state, and its substance seems to be only that the remedy of the creditor must be pursued by and in the name of the trustee. In our judgment, these considerations justify the conclusion that when it is said in section 70a (4), that the trustee shall be vested by operation of law with the title of the bankrupt to all property transferred by him in fraud of creditors, direct reference is had only to such transfers as have been invalidated by the Bankruptcy Act itself in section 67e, and that, even if the language should be thought to reach a transfer which the trustee might avoid under section 70e by subrogation to the rights of some creditor, the only "property" to which it could refer would be the property which, as between the bankrupt and these creditors, they had a right to subject to their claims—viz. enough to pay their debts. If a man transfers a $100,000 farm, so that it may not be reached by his creditors, who have $20,000 of claims, it is true in a very fair sense that the "property" which he transfers "in fraud of creditors" is the property which they had the right to get, and not the surplus.

Whether property which the assignee recovers under section 70e, in the special right of some particular creditors, should be distributed in bankruptcy only to them, or should be distributed, also, among creditors who could not have avoided the transfer, is a question which is now immaterial. We are concerned only with the extent of the recovery. See Globe Bank v. Martin (C. C. A. 6) 193 Fed. 841, 113 C. C. A. 627; s. c., 236 U. S. 288, 35 Sup. Ct. 377, 59 L. Ed. 583; In re Stuart (C. C. A. 6) 272 Fed. 938, 941.

The last part of section 70e, as applied to the facts in this case, helps us to interpret. For the purpose of such an action as was had here, the trustee may resort to the state court or to the bankruptcy court. The counsel fee being a part of the expenses of the trustee, the state court could have no jurisdiction to fix its amount, and yet, if resort was had to the state court to avoid the transfer, only that court could fix the amount which the defendants must pay in order to have the case dismissed, or for which, under the Tennessee statute, the creditor should have a lien. In the instant case, the state court could award a lien or recovery of only $21,500, while the bankruptcy court, upon the same facts, awarded $29,000. Certainly it was not intended that the statutory right of election between the courts should involve such a difference in the result.

We do not overlook that the form of the decree by the state court purported to transfer the whole title to the trustee; but the form which happened to be taken by the state court decree cannot control either the substantial right or the construction of the federal statute. Whatever the form of the decree, the trustee would doubtless be required to make a release of his lien or a conveyance of his title—whichever

the decree had given—upon payment or tender to him of the proper amount.

Our conclusion is that under section 70e, the property to be reached by the trustee is only that interest which would have satisfied the demands of the creditors who might have avoided the transfer, and that the recovery cannot include the costs of the bankruptcy administration. The rightfulness of this conclusion is indicated by the discussion by Judge Lowell (D. C., Mass.) in Re Mullen, 101 Fed. 413, and by Judge Clark (C. C., E. D. Tenn.) in Bush v. Storage Co., 136 Fed. 918. The court below relied on Rogers v. Page (C. C. A. 6) 140 Fed. 596, 606, 72 C. C. A. 164, s. c., 149 Fed. 194, 79 C. C. A. 153, s. c., 211 U. S. 580, 29 Sup. Ct. 159, 53 L. Ed. 332, to the effect that such a counsel fee should be paid out of the surplus which would be returned to the grantee or bankrupt. If we are correct as to the substantial distinction in this respect between sections 67e and 70e, the inapplicability of Rogers v. Page appears, for that suit was brought under section 67e.

We also observe that, from our stated conclusion, it would follow that, where a fraudulent conveyance was within four months and there is a surplus above the claims of creditors, the bankruptcy administration expenses can be charged against the surplus, while, if the conveyance was more than four months old, this cannot be done, and that this seems an anomaly. However, the Bankruptcy Act is full of anomalies and contradictions, if every clause is literally applied. Further, we think this suggestion of conflict is only superficial, and that there is good reason for the distinction. Such a conveyance, made within four months, is forbidden equally in every state by the express terms of the uniform system of bankruptcy which Congress has established, and it is logical to consider, as the estate of the bankrupt in the District Court for distribution, all the property, the presence of which in that court is required by the direct operation of the law itself. On the other hand, if the conveyance is more than four months old, it is reached only through calling upon some state law for aid; its liability to attack is no part of the uniform bankruptcy system. In some states, such attack would bring general relief to creditors; in others, partial relief; in others, none. It is fitting that the administration of such a feature shall conform fully to the state law—that the same law which creates the right shall measure the remedy.

[7, 8] It is said that in this case payment of the counsel fee should be made out of the surplus, because there was an understanding to that effect between Mr. Stokes and the Sedberrys, and because the present controversy was initiated by the filing of a petition in the bankruptcy court by the Sedberrys, which petition was upon that theory. As to the second point, it should be observed that the District Judge expressly permitted the Sedberrys, upon the argument, to change their position and to claim that the fee should be paid by the creditors; this would fully justify an amendment of the Sedberrys' petition nunc pro tunc, if that were necessary. As to the first point, it appears that, though there was an understanding to this effect, yet that it was reached as a part of a general compromise arrangement then entered into, in connection with which the Sedberrys understood that Mr. Stokes

would ask the allowance of only reasonable compensation, while in fact Mr. Stokes then intended to insist upon the 50 per cent. contract, but did not disclose to the Sedberrys its existence. The Sedberrys ought not to be bound by their part of the proposed compromise.

[9, 10] So far as the amount of the fee involves the discretion of the trial judge or his conclusion of fact as to what was reasonable, we cannot review it upon a petition to revise in matter of law. The opinion of the trial judge, which he expressly made his finding of fact, discloses the reasons or rules which controlled him in reaching the amount, and we can observe what these were. We think that the supposedly rather small chance of successful outcome, and the fact that for lack of assets the attorney could get no pay unless he succeeded, rightfully tend to justify a liberal fee; also, the amount of the recovery is a material element; but the District Judge considered the amount of recovery as $29,000, while we think the amount should be treated as $21,500.[1]

In view of the changes in the situation which our conclusion makes necessary, the award should be vacated, leaving the District Judge at liberty to use his discretion in again fixing the amount, with due regard to the modified character of the recovery and the change in the source from which payment must be made.

[11] In connection with the amount, complaint is made because the trustee was allowed $750 for expenses, without such itemization as the statute requires. We agree with the District Judge that the Sedberrys cannot well be heard to raise this question. The trustee asked for about $1,200 for the expenses of this litigation. There was no sufficient statement of detail, and the Sedberrys, on that ground, objected to its allowance. The referee held the charge not properly itemized, but thought $750 would be a proper amount, and said he would make that allowance, but, if any party still thought there ought to be further itemization, application might be made, and he would consider it. No further application was made. This was, in effect, the suggestion of a compromise, for the sake of avoiding further trouble and expense, and the silence of the Sedberrys should be taken as an acceptance of the offer.

We have examined the complaints made by Mr. Stokes and the trustee in their petition to revise. So far as these are not already covered hereby, we think they are without substantial merit.

The order under review should be modified, to the extent here indicated, and the case is remanded for that purpose. The Sedberrys will recover their costs.

---

[1] All figures herein are approximate, and intended only to identify the sum involved, not to fix it.