[No. 17971.    Department Two.    September 5, 1923.]

GLENN E. CUNNINGHAM, *as Trustee in Bankruptcy, etc., Respondent,* v. W. B. MITCHELL, *Appellant.*[1]

BANKRUPTCY (7)—FRAUDULENT TRANSFERS — EVIDENCE — SUFFICIENCY. Conveyances by a failing debtor to his attorney of property worth $6,000, in consideration of an indebtedness of $250, and an indefinite agreement for future services, constitute a fraudulent preference under the bankruptcy act.

SAME (18)—ACTIONS BY TRUSTEES—TO SET ASIDE FRAUDULENT TRANSFER—PROPER PARTY PLAINTIFF. A trustee in bankruptcy may prosecute an action to set aside conveyances made in fraud of creditors prior to the four months' period although there is only one creditor with an allowed claim who could have been defrauded.

SAME (18)—ACTIONS BY TRUSTEE—CONDITION PRECEDENT. An action by a trustee in bankruptcy to set aside a fraudulent conveyance is not prematurely commenced because begun before an actual formal allowance of any claim against the bankrupt, where a claim had been actually filed resting upon a formal unsatisfied judgment.

SAME (18)—ACTIONS BY TRUSTEE—PLEADING. The fact that the complaint did not allege insolvency at the time of making the conveyance is immaterial where there was no demurrer and the issue was raised and tried out.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered November 1, 1922, upon findings in favor of the plaintiff, in an action for equitable relief, tried to the court. Affirmed.

*W. B. Mitchell* and *George D. Ayers,* for appellant.

*Lloyd E. Gandy, Andrew Brown,* and *W. W. Zent,* for respondent.

PARKER, J.—The plaintiff, Cunningham, as trustee in bankruptcy in the matter of the estate of Charles Rury, a bankrupt, commenced this action in the superior court for Benton county, seeking, in the interest of creditors of Rury, the setting aside of conveyances

[1]Reported in 218 Pac. 386.

of real property, situated in that county, made by Rury to the defendant Mitchell more than four months prior to the filing of his voluntary petition in bankruptcy and the adjudication of his bankruptcy in the Federal court of the eastern district of this state. A trial in the superior court on the merits resulted in a decree being rendered awarding to the plaintiff as trustee in bankruptcy relief as prayed for, from which the defendant has appealed to this court.

The controlling facts, as we view them, may be summarized as follows: On April 8, 1920, there matured an indebtedness owing by Rury to Mary Bowen, evidenced by a promissory note which he had theretofore executed. A day or so prior to that date, attorneys for Miss Bowen advised Rury by letter addressed to and received by W. B. Mitchell, his then attorney, this defendant and appellant, that payment of the indebtedness so evidenced would be insisted upon at maturity, and, if not then promptly paid, suit would be brought against him looking to the enforcement of such payment. The indebtedness not being paid at maturity, on April 10, 1920, Miss Bowen commenced an action upon the note in the superior court for Spokane county against Rury, seeking a judgment against him for the amount due thereon, with attorney's fees as provided therein, and for her costs and disbursements. On the same day, Rury executed and delivered to appellant, who, as we have seen, was then his attorney, the deeds conveying several parcels of real property situated in Benton county, which are here in question. The property so conveyed was then of the value of more than $6,000. At that time, the total indebtedness owing by Rury to appellant did not exceed $250, which was for legal services and which, if justly measured, was probably less than that amount.

While appellant claims such indebtedness formed a
part of the consideration for the conveyances, he in-
sists that there were other additional considerations,
but he is not at all specific as to what the other addi-
tional considerations were, though he seems to regard
a somewhat indefinite understanding with Rury, touch-
ing his compensation for future services to be ren-
dered, as constituting sufficient additional considera-
tion to support the conveyances; that is, to support the
conveyances as against the creditors of Rury. At that
time, Rury was indebted to Miss Bowen upon the note
above mentioned in the sum of approximately $1,200,
and probably indebted to others in additional sums,
though we do not regard that of serious moment in our
present inquiry. It seems probable that, until these
conveyances were executed by Rury, he was not in-
solvent; but we think the evidence clearly warrants
the conclusion that the execution of these conveyances
rendered him insolvent in the sense that he did not
have sufficient remaining funds or property to satisfy
his indebtedness, whether such funds or property be
voluntarily applied by him to the payment of his in-
debtedness, or whether such funds or property be by
process of law subjected to the payment of his indebt-
edness. All this, it seems clear to us, was well known
to appellant who, again let us be reminded, was then
attorney for Rury. Without further comment upon
the facts and circumstances attending the making of
these conveyances as disclosed by this record, we deem
it sufficient to say that we are convinced, as the trial
court manifestly was, though it made no special find-
ings, that the conveyances were made and received
with comparatively no substantial consideration, in
furtherance of a purpose on the part of appellant and
Rury to dispose of this property with a view of de-

frauding Rury's creditors, and that the conveyances had, and will continue to have, that effect should the decree of the trial court setting them aside be reversed by this court.

On October 28, 1920, judgment was rendered by the superior court for Spokane county in favor of Miss Bowen and against Rury in the action above mentioned, awarding her recovery in the sum of approximately $1,350, including principal, interest, attorney's fees and costs. This judgment became final in the superior court on December 2, 1920, by the overruling of Rury's motion for a new trial. We note that appellant was attorney for Rury as defendant in that action.

On December 9, 1920, Rury filed in the Federal court for the eastern district of this state his voluntary petition in bankruptcy, and on the same day he was adjudged a bankrupt. He scheduled assets of very small apparent value, which assets proved to be of no value. He also scheduled, as one of his potential ultimate debts, the judgment rendered in favor of Miss Bowen and against him in the action above mentioned. We note that appellant was attorney for Rury in the filing of his petition in bankruptcy and in procuring the adjudication therein.

On December 22, 1920, Miss Bowen filed her claim in the bankruptcy proceedings for the indebtedness owing her upon the judgment above mentioned. Rury, by his attorney, this appellant, objected to the allowance of that claim on the sole ground that the judgment had been appealed from by Rury to this court, wherein a reversal was being sought. For this reason alone, the referee in bankruptcy delayed the formal approval of Miss Bowen's claim, though the judgment of the superior court had in no manner been superseded pending the appeal; and it was, therefore, at that time,

enforcible as fully as though no appeal had been taken therefrom. On January 2, 1921, this suit was commenced by the respondent trustee seeking the setting aside of the conveyances. On March 27, 1922, judgment upon which the claim of Miss Bowen was rested having been affirmed by this court, her claim was, by the referee in bankruptcy, formally allowed. On November 1, 1922, after a trial of this cause upon the merits, the decree setting aside the conveyances was rendered by the superior court, from which this appeal is prosecuted. We think the foregoing is a fair summary of the principal controlling facts, as disclosed by the record of this cause, though counsel for appellant vigorously contends to the contrary touching the question of Rury's insolvency at the time and immediately following the making of the conveyances and the good faith and fair consideration attending their making.

It is contended, in behalf of appellant, that the record of this cause shows that respondent, as trustee in bankruptcy, is not authorized to maintain this action, because the conveyances he is seeking to set aside were made and recorded more than four months prior to the filing of Rury's petition in bankruptcy, and there is no allowed or allowable claim against the bankrupt estate other than this claim of Miss Bowen. The time of the making and recording of the conveyances, it is true, as this record shows, was more than four months prior to the filing of Rury's petition in bankruptcy; and, for the sake of argument, we shall assume that this claim of Miss Bowen is the only allowed or allowable claim against the bankrupt estate. The argument seems to be that, because of these conditions, respondent, as trustee representing no creditor other than Miss Bowen who could have been defrauded by the conveyances in question, is not authorized to wage this

action as trustee looking to the bringing of the property so conveyed into the estate as general assets thereof and thereby subjecting it, not only to the payment of the claim of Miss Bowen, but also to the general expenses of the administration of the bankrupt estate.

The decision of the Federal circuit court of appeals for the sixth circuit in *Stokes v. Sedberry,* 275 Fed. 894, is relied upon in support of this contention. That decision does seem to hold that there is some limitation upon the extent to which the expenses of general administration of the bankrupt estate may be charged against property or funds acquired by the trustee in bankruptcy for the benefit of some particular creditor or class of creditors, when such recovery of property by him consists of the setting aside of conveyances made by the bankrupt more than four months prior to the commencement of the bankruptcy proceedings. That is, while all creditors may look to all the property coming into the hands of the trustee at the time of the commencement of the bankruptcy proceedings, and also to all property coming into his hands by virtue of the avoiding of conveyances made by the bankrupt within the preceding four months, it is claimed, and we concede for argument's sake, that property conveyed by the bankrupt prior to the four months' period in fraud of creditors can only be subjected to the payment of the creditors so defrauded.

· This, it seems plain to us, does not successfully argue that the trustee is not the proper party to prosecute actions to set aside conveyances made in fraud of creditors prior to the four months' period. As to what creditor or class of creditors the trustee is acting in the interest of in maintaining such actions has, it seems to us, to do only with the problem of the marshaling

of the assets of the bankrupt estate in the Federal
court after the trustee has successfully recovered such
property. We see nothing in the decision in *Stokes v.
Sedberry, supra,* suggesting a contrary view. Indeed,
in that case the problem came up in the bankruptcy
proceedings in substance as one of the marshaling of
the assets of the bankrupt estate. In *Treseder v.
Burgor,* 130 Wis. 201, 109 N. W. 957, a similar conten-
tion was made against the right of the trustee to have
set aside a conveyance made prior to the four months'
period. In disposing of the question Justice Kerwin,
speaking for the court, pertinently observed:

"It is contended by counsel for appellants that plain-
tiff in his representative capacity as trustee in bank-
ruptcy of the estate of defendant N. H. Burgor repre-
sented two classes of creditors, (a) a class entitled to
set aside the deed as fraudulent upon sufficient testi-
mony, because they were creditors at the time of the
execution of the deed; and (b) a class not entitled to
set the deed aside, because they had become creditors
after the alleged fraudulent transfer. And it is argued
that the plaintiff representing creditors can only have
relief for the first class, and the trial court could not
undertake to determine that some could participate in
the fruits of the litigation and others not. We are un-
able to agree with counsel for appellants in this con-
tention. It is sufficient to authorize the trustee to
maintain the action that the transfer was fraudulent
as against creditors existing at the time it was made,
and whether or not subsequent creditors can partici-
pate in the assets recovered by the trustee is entirely
immaterial so far as the trustee's right to maintain
the action is concerned. *Valley L. Co. v. Hogan,* 85
Wis. 366, 55 N. W. 415; *Jackman v. Eau Claire Nat.
Bank,* 125 Wis. 465, 104 N. W. 98. The judgment in
this case does not determine or adjudicate how the
fruits of the litigation shall be distributed among
creditors. That is a question for the Federal court in
which the bankruptcy proceedings are pending. *In re*

*Cannon* (D. C.), 121 Fed. 582. The complaint in this case clearly shows a cause of action to set aside the deed in question upon the ground that the conveyance was, at least,. fraudulent as to some creditors, and that is sufficient to constitute a good complaint by the trustee in bankruptcy to set aside a conveyance fraudulent as to creditors.''

It seems to us that the only substantial difference between the rights and the powers of the trustee in the waging of actions looking to the setting aside of conveyances made by the bankrupt during and prior to the four months' period is that, in actions so waged by him looking to the setting aside of conveyances by the bankrupt during the four months' period, his substantive rights are controlled by section 67 (e) of the bankruptcy act; while in the waging of actions looking to the setting aside of conveyances made by the bankrupt before the four months' period, his substantive rights are governed by the state law, though the question of his being the proper party to wage the latter is rendered plain by section 70 (e) of the bankruptcy act. *Stokes v. Sedberry*, 275 Fed. 894; *Engstrom v. Lowell*, 281 Fed. 973.

It seems quite clear to us that the trustee was fully qualified as the proper party to maintain this action. Indeed, we are unable to see by what right Miss Bowen, or any other creditor of Rury, could have commenced or maintained this action after the adjudication of the bankruptcy of Rury which, it seems to us, in legal effect made respondent, as trustee in bankruptcy, the exclusive representative of every creditor, taking away from each and all of them the right to maintain such an action.

Some contention is made in behalf of appellant that this action was. prematurely commenced, in that it was commenced before there was an actual formal allow-

ance by the referee in bankruptcy of Miss Bowen's claim based upon her judgment. We are of the opinion that this did not stand in the way of the waging of this action by respondent as trustee in bankruptcy, in view of the fact that the claim had actually been filed with the trustee and was rested upon a formal judgment against Rury concededly unsatisfied, and which judgment had not been stayed upon the appeal taken therefrom to this court. Its formal allowance by the trustee in bankruptcy was delayed solely because of such appeal. It had become an adjudicated debt of Rury, and the unsuperseded judgment entitled her to have the law invoked looking to its enforcement. She being unable to enforce it by execution because of the conveyances in question and the pendency of the bankruptcy proceeding, and being disqualified to maintain an action in her own name to set aside the conveyances because of the bankruptcy proceeding, respondent, as trustee in bankruptcy, was entitled to commence and maintain the action. After the affirmance of that judgment in this court, the allowance of it as a. claim necessarily followed as a matter of course, and we think related back to the time of its filing, in so far as we are here concerned with the right of the trustee in bankruptcy to begin and maintain this action.

Some contention is made in behalf of appellant that respondent's complaint, as trustee in bankruptcy, did not state a cause of action, principally because it did not allege the insolvency of Rury at the time of the making of the conveyances in question. Viewed critically, it may be that a demurrer to the complaint on that ground might possibly have been properly sustained. There was no demurrer, however, interposed by appellant in so far as we can see from the record before us, but he answered upon the merits, and, among other

things, alleged in his answer that Rury was solvent at the time of the making of the conveyances in question. Evidence was introduced upon the trial of the cause fully sustaining the claim of respondent as trustee that Rury became insolvent upon the making of the conveyances. While there seems to have been some objections made to the introduction of the evidence tending to show Rury to be then insolvent, it nevertheless was received by the court, manifestly upon the theory that the complaint should be deemed amended, in so far as necessary, to render such evidence admissible. In view of the whole record showing full opportunity on the part of appellant to meet this issue of insolvency, we think it is now too late to go back and view the complaint as originally filed for the purpose of determining whether or not it was technically perfect in this particular.

We note that the setting aside of all of the conveyances may bring into the bankrupt estate property more than sufficient in value to satisfy the claim of Miss Bowen, which, as we are advised by this record, seems to be the only claim to which the proceeds of such property are applicable in payment. It is enough for us to say, in answer to any claim that the court should not have set aside all of the conveyances, that the record fails to affirmatively show that it was practical, having in view the full protection of the rights of Miss Bowen, for the trial court to have limited its decree in that respect. What shall be done with the surplus, if any there be, we leave to the Federal court having in charge the administration of the bankrupt estate.

Some other contentions are made in behalf of appellant, but we think they are so wholly without merit as to not call for discussion.

The decree setting aside the conveyances in question is affirmed.

MAIN, C. J., FULLERTON, TOLMAN, and PEMBERTON, JJ., concur.

---

[No. 18098.    Department Two.    September 10, 1923.]

THE STATE OF WASHINGTON, *on the Relation of Campbell Oil Company, Plaintiff*, v. J. GRANT HINKLE, *Secretary of State, Respondent.*[1]

CORPORATIONS (250, 251)—FILING ARTICLES—COMPLIANCE WITH REQUIREMENTS—AMENDED ARTICLES. Rem. Comp. Stat., § 3853, making a certified copy of foreign articles of incorporation prima facie proof of the facts therein stated, does not require the filing of original articles as a condition precedent to the filing of amended articles, which, under the laws of the other state, take the place of, and show all the facts disclosed by, the original articles.

Application filed in the supreme court June 26, 1923, for a writ of mandamus to compel the secretary of state to file articles of incorporation. Granted.

*Allen, Martin & Wardall,* for relator.

*The Attorney General* and *R. G. Sharpe, Assistant,* for respondent.

MAIN, C. J.—This is an original proceeding in this court by which the relator, the Campbell Oil Company, a foreign corporation, seeks to compel the respondent, the secretary of state, to file its articles of incorporation in his office. The respondent declined to accept and file the articles tendered because they were amended articles and the original had not been placed on file in the office of the secretary of state, or tendered for filing.

[1]Reported in 218 Pac. 250.

The relator is a Delaware corporation, its original articles having been filed with the secretary of state of that state on the 29th day of August, 1922. On January 13, 1923, it filed its amended articles. Between the time of the filing of the original articles and the amended articles, no part of the capital stock of the company had been paid. The same persons who signed the original articles as incorporators signed the amended articles. In fact, in brief, the amended articles are an exact duplicate of the original articles except that, under the original articles, the name of the corporation was the "Gordon Campbell Oil and Refining Company," and in the amended articles its name is changed to the "Campbell Oil Company."

Under § 1939 of the Revised Code of Delaware for 1915, it is provided that it shall be lawful for the incorporators of any corporation, before the payment of any part of its capital, to file with the secretary of state an amended certificate, duly signed by the incorporators named in the original certificate of incorporation. Under Rem. Comp. Stat., § 3853 [P. C. § 4658], a foreign corporation desiring to transact business in this state is required to cause to be filed and recorded in the office of the secretary of state,

" . . . a certified copy of its charter, articles of incorporation, memorandum of association, or certificate of incorporation, certified to by an officer who is the custodian of the same according to the laws of the state or territory, country or colony, where such corporation is incorporated, or who is authorized to issue certificates of incorporation according to the laws of such state, territory or foreign country or colony. The instruments herein required to be filed and recorded shall be attested by such certifying officer under his hand and seal of office, which attestation shall be *prima facie* proof of the facts therein stated, and of the genuineness of the certificate."

The amended articles have attached thereto the certificate of the secretary of state of Delaware authenticating them. By the statute, this attestation is made *prima facie* proof of the facts therein stated. The amended articles of incorporation, if they are correct as certified to, contain every fact which the original articles, if they were presented, would disclose. This being true, there can be no good reason for requiring the original articles to be on file as a condition precedent to the filing of the amended articles. The statute of this state, above quoted, does not require it. The amended articles tendered are the articles of incorporation of the company, and under a further provision in the section of the Delaware statute, above mentioned, such amended articles take the place of the original articles of incorporation and are deemed to have been filed and recorded on the day of the filing and recording of the original.

The relator, having complied with the law in tendering the amended articles, which, as already stated, show every fact which would be disclosed by the original articles, had a right, under the statute, to have the same filed, and the respondent was in error in declining to accept them.

The writ will issue.

TOLMAN, PEMBERTON, and PARKER, JJ., concur.